**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>AB ELECTROLUX, ELECTROLUX NORTH AMERICA, INC., AND GENERAL ELECTRIC COMPANY,<br><br>*Defendants*. | Case No. 1:15-cv-01039-EGS |

**DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO PRODUCE
DOCUMENTS RESPONSIVE TO REQUESTS NO. 22 & 23
IN DEFENDANTS' FIRST REQUEST FOR PRODUCTION**

Plaintiff United States, in addition to being an antitrust enforcer, is itself a purchaser of the cooking appliances at issue in this case (including through the alleged "contract channel" of non-retail sales), both as a consumer for its own myriad facilities and as a re-seller to military members.  Thus, on July 17, 2015, Defendants requested that Plaintiff produce by August 6th certain documents relating to purchase data and bid information for its own appliance transactions.  But, in the nearly eight weeks since those requests for production, Plaintiff has failed to produce any information in response, and it has not even represented what it will produce and when it will do so.

Information about Plaintiff's appliance purchases is unquestionably relevant for all the ordinary reasons that customer evidence is considered in merger challenges.  Namely, evidence of customers' purchasing decisions and of suppliers' bidding activity will inform this Court's assessment of the proper antitrust market and of the challenged acquisition's likely competitive effects.  Moreover, in response to Plaintiff's asserted concerns about the burden of production,

Defendants have compromised by limiting their request to eight government entities that are notable purchasers of appliances:  (1) Department of Defense; (2) Army & Air Force Exchange Service; (3) Navy Nexcom West / Navy Exchange Service; (4) Armed Forces Retirement Home; (5) Coast Guard Exchange; (6) Marine Corp Exchange; (7) Government Services Administration; and (8) Department of Housing & Urban Development (national and local).  But Plaintiff still has not produced the requested information about those entities.  Instead, it attempts to turn this document request by Defendants into another discovery request to Defendants, by demanding that they must provide information about their sales contacts at the agencies, and then complaining about the alleged inadequacy of the information provided.  Yet it is Plaintiff's duty to comply with the request by identifying the relevant officials in its own agencies who have access to the requested information.

In light of the rapidly approaching discovery deadlines and trial date, and Plaintiff's delay and unreasonable position, Defendants must now ask this Court (1) to compel Plaintiff to comply with Requests No. 22 & 23 for the eight government entities specified above by September 22, 2015, and (2) to allow Defendants, if they so desire, to depose witnesses from those entities after the September 30 discovery deadline.  Likewise, Defendants also respectfully suggest that this Court should expedite the remaining briefing on this motion, as it did for Defendants' motion to compel Samsung to comply with their subpoena.  Counsel for Electrolux discussed with counsel for Plaintiff that this motion would be filed if the parties could not reach a negotiated resolution, and Plaintiff opposes the motion.

Dated:  September 8, 2015

Respectfully submitted,

/s/ Paul T. Denis
(with permission, by John M. Majoras)

/s/ John M. Majoras

Paul T. Denis (DDC No. 437040)
Paul H. Friedman (DDC No. 290635)
Mike Cowie (admitted *pro hac vice*)
DECHERT LLP
1900 K Street NW
Washington, DC 20006
Telephone:  (202) 261-3300
Facsimile: (202) 261-3333
paul.denis@dechert.com
paul.friedman@dechert.com
mike.cowie@dechert.com

*Counsel for Defendant General Electric
Company*

John M. Majoras (DDC No. 474267)
Joe Sims (DDC No. 962050)
Michael R. Shumaker (admitted *pro hac vice*)
Hashim M. Mooppan (DDC No. 981758)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone:  (202) 879-3939
Facsimile: (202) 626-1700
jmmajoras@jonesday.com
jsims@jonesday.com
mrshumaker@jonesday.com
hmmooppan@jonesday.com

Dana Baiocco (admitted *pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110-1781
Telephone:  (617) 449-6889
Facsimile:  (617) 449-6999
dbaiocco@jonesday.com

Daniel E. Reidy (admitted *pro hac vice*)
Paula W. Render (admitted *pro hac vice*)
JONES DAY
77 West Wacker Drive
Chicago, IL 60601-1692
Telephone:  (312) 782-3939
Facsimile: (312) 782-8585
dereidy@jonesday.com
prender@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Counsel for Defendants AB Electrolux and
Electrolux North America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 8th day of September, 2015, I caused this document to be filed electronically and served electronically via ECF pursuant to LCvR 5.4.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system or by email and U.S. mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

Dated:  September 8, 2015     Respectfully submitted,

            */s/ John M. Majoras*
            John M. Majoras (DDC No. 474267)
            JONES DAY
            51 Louisiana Avenue, NW
            Washington, DC 20001
            Telephone:  (202) 879-3939
            Facsimile: (202) 626-1700
            jmmajoras@jonesday.com

            *Counsel for Defendants AB Electrolux and*
            *Electrolux North America, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

Case No. 1:15-cv-01039-EGS

AB ELECTROLUX, ELECTROLUX NORTH
AMERICA, INC., AND GENERAL ELECTRIC
COMPANY,

*Defendants.*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS RESPONSIVE TO REQUESTS NO. 22 & 23 IN DEFENDANTS' FIRST REQUEST FOR PRODUCTION

Customer-related evidence is indisputably relevant when evaluating the competitive effects of a challenged acquisition. And Plaintiff United States, in addition to being an antitrust enforcer, is itself a purchaser of cooking appliances, including as one of the "governmental entities" purchasing through the alleged "contract channel" of non-retail sales. Complaint, ECF No. 1, ¶17. Thus, on July 17, 2015, Defendants requested that Plaintiff produce documents relating to purchase data and bid information for its own appliance transactions, just as Plaintiff and Defendants have requested such information from numerous non-party appliance purchasers.

Nearly eight weeks later, however, Plaintiff has failed to produce any information in response to these requests for production, and it has not even represented what it will produce and when it will do so. In its initial objections, Plaintiff asserted that all such information was irrelevant, and that production would be unduly burdensome regardless. Yet Plaintiff did not substantiate either assertion, much less distinguish itself in either respect from the myriad non-party appliance purchasers who have produced (or been asked to produce) such information.

Defendants promptly requested a meet-and-confer and held numerous discussions with Plaintiff over the next several weeks.  Defendants repeatedly explained that information about Plaintiff's appliance purchases is relevant for all the ordinary reasons that customer information is considered in merger challenges.  Namely, evidence of customers' purchasing decisions and of suppliers' bidding activity will inform this Court's assessment of the proper antitrust market and of the challenged acquisition's likely competitive effects.  For example, Plaintiff's purchasing history will inform whether the alleged "contract channel" is a cognizably distinct antitrust market, and suppliers' bids for Plaintiff's appliance needs will inform whether Defendants' transaction will likely lessen competition in light of the other existing and potential competitors.

Unable to seriously dispute relevance, Plaintiff primarily contended that the requests were unduly burdensome because they applied to the entire federal government.  Defendants expressed their willingness to reasonably narrow the requests if specific burdens were shown. Indeed, in the spirit of compromise, Defendants limited the request to eight government entities. But Plaintiff still has not produced any of the requested information, or even represented what it will produce and when it will do so.  Plaintiff instead turned the requests into an opportunity to impose added burdens on Defendants.  Remarkably, Plaintiff demanded that Defendants provide information about their sales contacts at the agencies as a prerequisite for Plaintiff deciding whether to comply, and Plaintiff now justifies its continued failure to produce any documents based on the alleged inadequacy of the information provided.  Yet it is Plaintiff's duty to comply with the request by identifying the relevant officials in its own agencies who have access to the requested information, and Plaintiff cannot justify its ongoing breach of that duty by responding to Defendants' request for production with its own requests for information — especially where the information it requests from Defendants concerns Plaintiff's own bureaucracy.

Given Plaintiff's unreasonable position and delay, the parties are at an impasse. Thus, given the rapid approach of the close of discovery and the start of trial, Defendants must move to compel Plaintiff to comply with Requests No. 22 & 23 for the eight specified government entities by September 22, 2015.

## BACKGROUND

On July 1, 2015, the United States commenced a civil action to enjoin Electrolux's proposed acquisition of GE's assets relating to its appliance business unit. Plaintiff claims that the proposed acquisition violates Section 7 of the Clayton Act, 15 U.S.C. § 18, because it allegedly will have anticompetitive effects on the sale of ranges, cooktops, and wall ovens in this country. Compl., ECF No. 1, ¶¶1–5, 13–14, 20–35. Plaintiff further alleges that, due to significant barriers to entry, "new entry or expansion by existing competitors is unlikely to prevent or remedy" the alleged anticompetitive effects of the acquisition. *Id.* ¶36. Indeed, Plaintiff asserts that the proposed acquisition "would create a duopoly" between Electrolux and Whirlpool in the so-called "contract channel," which involves non-retail sales to home builders, property managers, governmental entities, and others. *Id.* ¶¶2, 17, 23. The ultimate result, Plaintiff claims, will be "less competition, higher prices, and fewer options for millions of Americans who buy major cooking appliances each year." *Id.* ¶1.

Defendants disagree. The appliances industry in the United States and around the world is intensely competitive. Appliance suppliers are continually innovating in order to offer more highly featured products at lower prices, and the number of appliance suppliers competing for business has steadily increased in the United States in recent years. Of particular relevance here, those consumers who prefer purchasing through the contract channel have benefited from the increased competition, with respect to the performance of sellers in that non-retail channel as well as the increasing ability of retailers to serve such purchasers too. Defendants thus intend to

show at trial that the competition in this already competitive industry will continue unabated following the acquisition as (among other things) appliance purchasers retain the ability to demand lower prices and higher quality and services, regardless of purchasing channel.

All of this, however, requires evidence from appliance purchasers, including Plaintiff.  As in any antitrust action seeking to enjoin an acquisition, determining the competitive effects of the acquisition will turn heavily on predictions about how customers will likely respond, based on their past conduct and future plans.  This explains why Plaintiff sought information from purchasers during its pre-suit investigation and why both Plaintiff and Defendants have requested documents from a host of purchasers in the appliances industry.  Indeed, Plaintiff has included three contract-channel customers on its preliminary trial witness list.  Plaintiff itself, though, is also an appliance purchaser, both as a consumer for its own myriad facilities and as a re-seller to military members.[1]

Accordingly, in Defendants' First Set of Requests for Production, which was served on July 15th and which requested production by August 6th, Exhibit A at 1, Defendants asked that Plaintiff produce documents related to its own appliance purchases.  In particular, Request 22 sought "[a]ll documents, databases, or data sets used or maintained by Plaintiff containing information regarding Plaintiff's purchases of appliances in the United States from January 1, 2005 to the present."  *Id.* at 13.  Likewise, Request 23 sought "[a]ll documents, databases, or data sets used or maintained by Plaintiff related to any requests for proposals or projects bids from January 1, 2005 to the present concerning the purchase of appliances by Plaintiff."  *Id.* at 14.

On July 22nd, Plaintiff responded and objected to Requests 22 and 23.  Exhibit B at 1, 16-18.  Plaintiff initially asserted that "the United States' appliance purchases over the past ten

---

[1] *See, e.g.*, Exhibit D (showing cooking ranges sold via the website of the Army & Air Force Exchange Service).

years" and "the requests for proposal by and bids to the United States over the past ten years" are both "irrelevant to whether the proposed transaction is likely anticompetitive." *Id.* at 16-17. Moreover, Plaintiff insisted that the "burden and expense of collecting this potentially vast array of information" from "the various departments, agencies, offices, boards, and divisions within the United States" would be "unduly burdensome." *Id.* Plaintiff also contended that its purchases "likely account for a small percentage of contract-channel purchases," and that the requests were "unreasonably cumulative" because Defendants should be able to "determine the amount of sales to the United States" from their own records and other documents already produced in discovery. *Id.*

Defendants promptly requested a meet-and-confer, and from July 24th through September 4th, the parties addressed this issue several times. *See, e.g.*, Exhibit C (email chain referencing and continuing earlier discussions). Plaintiff's primary contention during the discussions has been that contacting every purchasing entity within the Government is too burdensome given the size and scope of the federal bureaucracy — indeed, Plaintiff's counsel went so far as to suggest that identifying the appropriate purchasing officials would distract "large government agencies" from "their public service missions." *Id.* (email on 9/4/15 at 4:36 PM). Although Defendants dispute that such an undertaking would be unduly burdensome, they nevertheless agreed on August 1st, in the spirit of compromise, to limit the request to a targeted list of eight government entities that are notable purchasers of appliances:

- Department of Defense
- Army & Air Force Exchange Service
- Navy Nexcom West / Navy Exchange Service
- Armed Forces Retirement Home
- Coast Guard Exchange
- Marine Corp Exchange
- Government Services Administration
- Department of Housing & Urban Development (national and local)

Nevertheless, more than a month later, Plaintiff still has not complied with even this substantially limited request for information, and indeed has not even represented what it will produce and when it will do so. *Id.* Instead, Plaintiff attempts to turn this request into another discovery request to Defendants, complaining that "Defendants have not provided contact information for all of the agencies from which [they] demand production." *Id.* Although Defendants did agree to try to identify whether they have any sales contacts at the specified agencies, they were quite clear that Plaintiff should not wait for them to do so. Defendants explained that they do not have contacts at all of the agencies and that their sales contacts are unlikely to be the appropriate agency employees in responding to their document request. More fundamentally, Plaintiff has the duty to comply with the request for production, and it should be responsible for knowing its own bureaucracy at least as well as Defendants do.

At this point, negotiations have reached an impasse due to Plaintiff's unreasonable position and delay. *See id.* Given the rapidly approaching close of discovery and start of trial, Defendants have no choice but to ask this Court to compel Plaintiff to comply with Requests No. 22 & 23 for the eight government entities listed above by September 22, 2015.

## ARGUMENT

A party has a right to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Generally, courts construe the scope of discovery liberally in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452 (D.D.C. 2002) (quotation marks omitted). A party objecting to relevant discovery must prove that the request is unduly burdensome in light of its relative value. *See* Fed. R. Civ. P. 26(b)(2)(C). The objecting party must martial particular facts establishing the basis for its objection. *See, e.g., Alexander v. F.B.I.*, 194 F.R.D. 305, 315 (D.D.C. 2000) ("[T]o support its

objection, the EOP must make a specific, detailed showing of the burden such a search would require."). Broad allegations of harm, unsubstantiated by specific examples or reasoning, are insufficient. *See, e.g.*, *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 837 F. Supp. 454, 458 n. 2 (D.D.C.1993) (assertions of a burden without "specific estimates of staff hours needed to comply" will be "categorically rejected").

Defendants' Requests No. 22 & 23 seek information that falls well within the scope of permissible discovery, and the grounds Plaintiff offers for refusing to comply are baseless. An order directing Plaintiff to comply is therefore warranted.

## I.  Defendants' Requests No. 22 & 23 Seek Information That Is Plainly Relevant To Their Defense Of This Case

In general, customer-related evidence is highly relevant to whether a challenged transaction will likely have an anticompetitive effect in an alleged market. *See* DOJ, Horizontal Merger Guidelines (2010) ("Merger Guidelines") § 2.2.2 ("Information from customers about how they would likely respond to a price increase, and the relative attractiveness of different products or suppliers, may be highly relevant, especially when corroborated by other evidence such as historical purchasing patterns and practices."); *see also, e.g.*, *FTC v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 48 (D.D.C. 1998) (relying on customer evidence concerning the unavailability of substitute methods of product delivery); *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 218 n.4 (D.C. Cir. 1986) ("we assume that economic actors usually have accurate perceptions of economic realities").

And customer-related evidence is particularly relevant here. Plaintiff has alleged that Whirlpool, GE, and Electrolux dominate an alleged market in the sale of cooking appliances through the "contract channel," which Plaintiff itself defines as sales to "governmental entities" and other non-retail purchasers. Compl., ECF No. 1, ¶¶2, 17, 23, 26. By contrast, Defendants

intend to prove at trial (1) that the so-called "contract channel" is not a cognizably distinct antitrust market, and (2) that, over the last decade, non-party competitors have significantly increased competition in appliance sales, and this competition will continue unabated after the proposed acquisition (just as it did after the Whirlpool/Maytag merger).   Information about Plaintiffs' own appliance purchases directly bears on these competing theories, for the same reasons that Plaintiff and Defendants have sought information about other appliance purchasers.

*First*, the requested information is relevant to assessing whether the "contract channel" is a relevant market distinct from retail sales.  Defining the relevant market is the "starting point for any merger analysis," and the "definition of the 'relevant market' rests on a determination of available substitutes." *Cardinal Health*, 12 F. Supp. 2d. at 46;  *see also, e.g.*, *Rothery Storage & Van*, 792 F.2d at 218-19.   Thus, evidence concerning the suppliers from whom Plaintiff purchases appliances and the service capabilities provided by those suppliers would be highly probative of whether appliance purchasers like Plaintiff would consider reasonable substitutes for "contract channel" sales. *See Cardinal Health*, 12 F. Supp. 2d. at 48.

*Second*, the requested information is relevant to whether the challenged acquisition would likely lessen competition in the markets alleged.  For appliance customers like Plaintiff, their purchasing data, and especially sellers' bids for their business, directly illuminate the state of competition and the extent to which non-party competitors are a growing force in competing for sales that the Government alleges can be made only by Defendants or Whirlpool. *See, e.g.*, *FTC v. Arch Coal*, 329 F. Supp. 2d 109, 133, 138, 144–45, 146–47 (D.D.C. 2004) (discussing bid processes, requests for proposals, and bid solicitations and receipts); Merger Guidelines § 6.2 (likelihood of anticompetitive effects in bidding markets depends on how the merging entities compare relative to other bidders).

In sum, Requests No. 22 & 23 are directly relevant to assessing the existence and nature of the markets alleged, and thus they fit comfortably within the broad scope of discovery allowed under Rule 26.  In fact, these requests seek precisely the same type of customer-related evidence from Plaintiff that Plaintiff and Defendants both have sought from numerous non-party appliance purchasers.   All of this underscores the reasonableness of Defendants' requests, while highlighting the unreasonableness of Plaintiff's objections.[2]

## II.     Plaintiff's Objections To Producing The Documents Are Baseless

Given the highly relevant nature of the requested information, Plaintiff must demonstrate an extraordinary strain on its resources to prove that compliance would be *unduly* burdensome. Plaintiff does not come close to making such a showing, let alone with the factual specificity and support required by the case-law.  *See supra* at 6-7.

*First*, Plaintiff principally objects that it is an excessive burden simply to determine which of its own officials have access to its own appliance purchase data and bid information — indeed, even as limited to the eight specified government entities that Defendants proposed as a compromise.  Exhibit C (email on 9/4/15 at 4:36 PM).  That is implausible on its face.  Plaintiff cannot seriously contend that it takes more than a month simply to determine which officials in each of eight specified federal entities have access to the requested information, much less that Defendants somehow are more able to make that determination and thus somehow obligated to provide that information to Plaintiff.  And Plaintiff's objection to the alleged burden of party discovery is particularly unreasonable given that Plaintiff and Defendants both have requested the same types of information from *non-party* appliance purchasers.

---

[2] Plaintiff has suggested that the 10-year time-period for Requests No. 22 & 23 is over-broad. Exhibit B at 16-17.  But the last decade was a critical period in the appliances industry, especially given the natural experiment following the 2006 Whirlpool-Maytag merger.  *See* Defts. Memo. i/s/o Mot. to Compel Samsung, ECF No. 88, at 15.  Nevertheless, Defendants have explained to Plaintiff that they would be willing to consider narrowing the time-period of Requests No. 22 & 23 if that would facilitate partial compliance.  Yet Plaintiff has not proposed a compromise in this regard.  *See* Exhibit C.

*Second*, Plaintiff additionally objects that the requested information is "cumulative" because Defendants supposedly should already be able to determine Plaintiff's purchases made and bids received, based on Defendants' own records and the records of non-party competitors that were produced to Plaintiff during the administrative investigation and then disclosed to Defendants in discovery.  Exhibit B at 16-17; Exhibit C (email on 9/4/15 at 4:36 PM).  But it is entirely reasonable for Defendants to request that Plaintiff produce its own records of its purchases made and bids received.  Defendants' own records and whatever records are produced by the non-party competitors are hardly an adequate substitute, given that those records may be incomplete even with respect to total sales information and necessarily will not reflect the internal decisionmaking of Plaintiff's purchasing agencies.

*Finally*, Plaintiff also objects that "federal government purchases likely account for a small percentage of contract-channel purchases."  Exhibit B at 16-17.  But the requested information is sought to defend against that assertion.  More fundamentally, though, Plaintiff asserts that this merger will have anticompetitive effects on the "contract channel" — not merely on large purchasers within that channel.  *See* Compl., ECF No. 1, ¶¶2, 17, 23, 26.  Indeed, the only customers that Plaintiff has listed on its preliminary witness list are relatively small purchasers.  Thus, evidence about the likely competitive effects even on small customers in the alleged market is undoubtedly relevant, and all the more so where the customer is Plaintiff itself.

In sum, Plaintiff's claims of undue burden are meritless.  Plaintiff has simply declined to comply with a relevant and reasonable discovery request.

**CONCLUSION**

Given Plaintiff's unreasonable position and the rapid approach of the close of discovery and the start of trial, this Court should (1) compel Plaintiff to comply with Requests No. 22 & 23 for the eight government entities specified above by September 22, 2015, and (2) allow Defendants, if they so desire, to depose witnesses from those entities after the September 30 discovery deadline.   Likewise, Defendants also respectfully suggest that this Court should expedite the remaining briefing on this motion, as it did for Defendants' motion to compel Samsung to comply with their subpoena.

Dated:  September 8, 2015

Respectfully submitted,

*/s/ Paul T. Denis*
*(with permission, by John M. Majoras)*
Paul T. Denis (DDC No. 437040)
Paul H. Friedman (DDC No. 290635)
Mike Cowie (admitted *pro hac vice*)
DECHERT LLP
1900 K Street NW
Washington, DC 20006
Telephone:  (202) 261-3300
Facsimile: (202) 261-3333
paul.denis@dechert.com
paul.friedman@dechert.com
mike.cowie@dechert.com

*Counsel for Defendant General Electric Company*

*/s/ John M. Majoras*
John M. Majoras (DDC No. 474267)
Joe Sims (DDC No. 962050)
Michael R. Shumaker (admitted *pro hac vice*)
Hashim M. Mooppan (DDC No. 981758)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone:  (202) 879-3939
Facsimile: (202) 626-1700
jmmajoras@jonesday.com
jsims@jonesday.com
mrshumaker@jonesday.com
hmmooppan@jonesday.com

Dana Baiocco (admitted *pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110-1781
Telephone:  (617) 449-6889
Facsimile:  (617) 449-6999
dbaiocco@jonesday.com

Daniel E. Reidy (admitted *pro hac vice*)
Paula W. Render (admitted *pro hac vice*)
JONES DAY
77 West Wacker Drive
Chicago, IL 60601-1692
Telephone:  (312) 782-3939
Facsimile: (312) 782-8585
dereidy@jonesday.com
prender@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Counsel for Defendants AB Electrolux and Electrolux North America, Inc.*

## <u>LIST OF EXHIBITS</u>

**Exhibit A:**    Defendant's First Set of Requests for Production to Plaintiff,
dated July 17, 2015

**Exhibit B:**    Plaintiff's Objections and Responses to Defendants' First Set of Requests for
Production to Plaintiff, dated July 22, 2015

**Exhibit C:**    Email chain between counsel for Electrolux and counsel for the Government,
dated between September 2, 2015, and September 5, 2015

**Exhibit D:**    Website page of Army & Air Force Exchange,
https://www.shopmyexchange.com/browse/home-appliances/major-
appliances/cooking-appliances/ranges-wall-ovens/electric-ranges/_/
N-109746?Ns=product.displayName%7C1
[9/5/2015 9:39:26 AM]

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2015, I caused this document to be filed electronically and served electronically via ECF pursuant to LCvR 5.4.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system or by email and U.S. mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.


Dated:  September 8, 2015                Respectfully submitted,

                                         */s/ John M. Majoras*
                                         John M. Majoras (DDC No. 474267)
                                         JONES DAY
                                         51 Louisiana Avenue, NW
                                         Washington, DC 20001
                                         Telephone:  (202) 879-3939
                                         Facsimile: (202) 626-1700
                                         jmmajoras@jonesday.com

                                         *Counsel for Defendants AB Electrolux and*
                                         *Electrolux North America, Inc.*