## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
UNITED STATES OF AMERICA,       )
                               )
              Plaintiff,        )
                               )   Civil Action No.15-1039 (EGS)
      v.                        )   (UNDER SEAL)
                               )
AB ELECTROLUX, ELECTROLUX       )
NORTH AMERICA, INC. AND         )
GENERAL ELECTRIC,               )
                               )
              Defendants.       )
_____)
```

### MEMORANDUM OPINION

Pending before the Court are two motions to compel.
Defendants AB Electrolux, Electrolux North American, Inc.
("Electrolux") and General Electric ("GE") (collectively
"Defendants") move to compel production of certain documents
from the United States of America ("Plaintiff"). Defs.' Mot.
Compel, Docket No. 102. Plaintiff in turn moves to compel
production of certain documents from Electrolux. Pl.'s Mot.
Compel, Docket No. 121 (filed under seal). Upon consideration of
the motions, the responses and replies thereto, the applicable
law, and the entire record, both motions are **GRANTED in part** and
**DENIED in part.**

### I.    BACKGROUND

Plaintiff filed this lawsuit on July 1, 2015 to enjoin

Electrolux's acquisition of GE's appliance business unit. *See generally*, Compl., Docket No. 1. Plaintiff contends the proposed acquisition will have anticompetitive effects on the cooking appliance market in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. *Id.* at ¶¶ 1–5, 13–14, 20–35.

The parties have agreed to an aggressive discovery schedule, with fact discovery set to close September 30, 2015. Am. Sched. Order, Docket No. 89 at 2. A bench trial is scheduled to begin November 9, 2015, and is projected to last approximately three weeks. *Id.* at 4.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevance" is broadly construed and discovery need not be admissible at trial so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.; see also Food Lion v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). District Courts have considerable discretion in resolving discovery matters, but must limit discovery where it is shown to be unreasonably cumulative, more easily obtained from an alternative source, or where the burden and expense of producing the discovery outweighs the likely benefit of the information

2

sought. Fed. R. Civ. P. 26(b)(2)(C); *see also Donohoe v.*

*Bonneville Int'l Corp.*, 602 F. Supp.2d 1, 3 (D.D.C. 2009).

### III. ANALYSIS

#### A. Defendants' Motion to Compel

Defendants move to compel Plaintiff's response to

Document Request Numbers 22 and 23 ("the requests"):

> **Document Request 22.** All documents, databases, or data
> sets used or maintained by Plaintiff containing
> information regarding Plaintiff's purchases of
> appliances in the United States from January 1, 2005 to
> the present, including but not limited to SKU, product
> description, appliance supplier, purchaser, purchaser
> address, quantity purchased of each SKU, price per unit
> of each SKU, discounts, rebates and any other pricing
> terms relating to the purchase, date of purchase, and
> date of delivery, and all data dictionaries or other
> documents that explain the data fields for such
> documents, databases or data sets.

> **Document Request 23.** All documents, databases, or data
> sets used or maintained by Plaintiff related to any
> requests for proposals or project bids from January 1,
> 2005 to the present concerning the purchase of
> appliances by Plaintiff and any responses and
> submissions thereto, and all data dictionaries or other
> documents that explain the stat fields for such
> documents, database or data sets.

Def.'s First Set of Request for Production, Docket No. 102-2, Ex.

A. Defendants argue the requests seek consumer-related evidence

that is relevant when evaluating the competitive effects of a

challenged acquisition. Defs.' Mem. Supp. Mot. Compel ("Defs.'

Mem. Supp."), Docket No. 102 at 1. Because the Government purchases

cooking appliances, including purchases in the contract channel of

non-retail sales, Defendants argue the requests are relevant and not overly burdensome for the Government to produce. *Id.* At the parties' Rule 26(f) conference, Defendants agreed to narrow the requests to focus on eight government entities.[1]

Plaintiff argues that Defendants' motion is "meritless and now moot." Pl.'s Opp. Mem. Defs.' Mot. Compel ("Pl.'s Opp. Mem."), Docket No. 116 at 2. Plaintiff maintains that it began production of the relevant documents during the week of September 7, 2015 (the same week Defendants filed their motion to compel), and completed the production by September 16, 2015. *Id.* Defendants insist Plaintiff's response "omits significant data concerning purchase information under Request 22" and "lacks a single document concerning bid information under Request No. 23." Defs.' Reply Mem., Docket No. 119 at 2. Specifically, Defendants seek the competitive bidding information sent and obtained by the government agencies at issue, arguing such information "is critical to determining which appliance suppliers are bidding on

---

[1] The eight government entities are the Department of Defense, Army & Air Force Exchange Service, Navy Nexcom West / Navy Exchange Service, Armed Forces Retirement Home, Coast Guard Exchange, Marine Corp Exchange, Government Services Administration and the Department of Housing & Urban Development (national and local). During the process of the Government's production, it became clear that the Department of Defense and the Department of Housing and Urban Development do not directly purchase the appliances at issue in this case, leaving only six government agencies with potentially relevant information. Pl.'s Opp. Mem. at 3.

that opportunity, and how the entities are analyzing their options for purchasing appliances." *Id.* In regard to Request 22, Defendants argue Plaintiff included aggregated appliance purchase summaries rather than the underlying purchase data, thus depriving Defendants of information needed to "analyze the contours of the markets alleged and the nature of competition within them." *Id.* at 3.

Defendants are correct that the additional information sought is relevant. *See* Defs.' Mem. Supp. at 11, citing Horizontal Merger Guidelines (2010) § 2.2.2 ("Information from customers about how they would likely respond to a price increase, and the relative attractiveness of different products or suppliers, may be highly relevant, especially when corroborated by other evidence such as historical purchasing of patterns and practices."). Plaintiff cites no authority for the proposition that the information sought is *irrelevant*, but argues that Defendants' request is only "marginally relevant" based on the "tiny slice" of the "already small portion" of the millions of appliances at issue bought by the Government. Pl.'s Mem. Opp. at 9. Both parties make salient points: although the information sought is relevant, the burden of producing information from six government entities that covers the last decade is overly burdensome in light of its likely probative value.

Thus, Defendants' motion to compel is **GRANTED in part** and **DENIED in part**, as follows:

1. To the extent Defendants seek proposals, project bids and underlying purchase data of relevant appliances bought in the United States by the Army & Air Force Exchange Service, Navy Nexcom West / Navy Exchange Service, Armed Forces Retirement Home, Coast Guard Exchange, Marine Corp Exchange, and the Government Services Administration from January 1, 2010 to the present, Defendants' motion is **GRANTED**;

2. To the extent Defendants seek such information from before January 1, 2010, the motion is **DENIED**.[2]

**B. Plaintiff's Motion to Compel**

Plaintiff seeks to compel production of documents related to four areas of written communication:

i.   Communications with non-parties regarding the proposed acquisition or this litigation;

ii.  Material concerning bidding and negotiations contract-channel purchasers;

iii. Information in the possession of Electrolux's Board Members that discusses the two Electrolux executives who are or were in charge of competition strategy in the relevant markets; and

iv.  Employment-related materials for Electrolux employees who are listed on the parties' preliminary trial witness lists, including the witness' descriptions of their achievements and work performed.

---

[2] Defendants seek permission to depose fact witnesses after September 30, 2015. Def.'s Mem. Supp. at 11. Plaintiff indicates that Defendants have yet to raise this issue with the United States. Pl.'s Mem. Opp. at 12, fn 2. To the extent Defendants seek to hold depositions of fact witnesses after September 30, 2015, the parties are ordered to meet and confer on that issue.

Pl.'s Mem. Supp. Mot. Compel ("Pl.'s Mem. Supp."), Docket No.
121. Defendants object to Plaintiff's first request based on the
work-product doctrine and the remaining requests as irrelevant
and overly burdensome.

   1. **Discoverability of Electrolux's communications with non-parties.**

   Plaintiff seeks to compel production of all communications
between Electrolux and non-parties that relate to Electrolux's
acquisition of GE's appliance unit, the Government's
investigation into the acquisition, and this lawsuit:

> **Document Request No. 1.** All documents relating to
> communications between Electrolux, or its counsel, and
> any non-party, or counsel for any non-party, relating to
> the Transaction, the Transaction's possible or potential
> effects, the government's investigation of the
> Transaction, or this lawsuit seeking to block the
> Transaction.
>
> **Document Request No. 30.** All documents relating to any
> discussion, statement, or expression of support for,
> opposition to, or concern about the Transaction by any
> non-party, including retailers, appliance,
> manufacturers, or contract-channel purchasers.

Pl.'s First Request for Documents, Docket No. 103, Ex. A at 7
and 12.

> **Document Request No. 1.** All documents constituting or
> containing any communication with any non-party
> preliminary trial witness for defendants, counsel for
> any non-party preliminary trial preliminary trial
> witness for defendants, or with any other employee
> working for the same firm as any non-party preliminary
> trial witness for defendants, relating to the
> Transaction, the Litigation, or to any possible role or
> participation the non-party preliminary trial witness

> for defendants may have (as a witness or  otherwise) in
> this Litigation.

Pl.'s Second Request for Documents, Docket No. 103, Ex. B

Although Electrolux indicated in its initial objections

that it would comply at least in part with Plaintiff's requests,

it now takes the position that all communications made with non-

parties "in anticipation of litigation" are protected by the

work-product doctrine. *See* Docket No. 103, Exs. F and H; *see*

*also* Def.'s Mem. Opp., Docket No. 117 at 5. Plaintiff represents

that Electrolux has produced a total of three documents

pertaining to communications of other Defendants and non-

parties, but has "produced no communication between it or its

counsel and non-parties." Pl.'s Mem. Supp. at 7.[3] The temporal

nature and volume of documents Electrolux claims are protected

is a mystery to the Court, as Electrolux has not bothered to

---

[3] This is despite the parties agreed upon language in the
Protective Order requiring that each party produce:

> (a)  all documents data, information, or transcripts
>      of testimony that (i) **any non-party provided** to
>      any party either voluntarily or under compulsory
>      process **preceding the filing** of this action in
>      the course of the parties' inquiries into the
>      competitive effects of the proposed acquisition
>      or (ii) **any party provided to any non-party**
>      **preceding the filing** of this action in the course
>      of the parties' inquiries to the competitive
>      effects of the proposed acquisition.

Docket No. 28 at ¶ 4 (emphasis added).

submit a privilege log in support of its Memorandum in
Opposition. *See* Docket No. 117, Ex. A (Def.'s Obj. to Second
Request); Ex. B (Def.'s Obj. to First Request); Ex. C (E-mail
between counsel); *see also* Fed. R. Civ. P 26(b)((5)(A)(i)-
(ii)(requiring a party who withholds otherwise discoverable
material subject to a privilege or protection to "describe the
nature of the documents, communications, or tangible things not
produced or disclosed——and do so in a manner that, without
revealing information itself privileged or protected, will
enable other parties to assess the claim."). In light of
Defendant's obligations under the Protective Order, which
requires production of non-party communications **preceding the
filing** of this lawsuit, the Court assumes the communications at
issue are from July 1, 2015 to the present. *See* Docket No. 28 at
¶ 4. However, given that Electrolux argues all communications
made "'because of' **the *prospect* of litigation**" are protected, it
appears possible that that some of the communications withheld
may have occurred prior to July 1, 2015. Def.'s Mem. Opp. at 5.

**(a)  The work product doctrine**

In 1947 the Supreme Court established the work-product
doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947). The Court
denied discovery of counsel's witness interview notes, reasoning
that some measure of protection must be afforded to attorneys'
work product. "It is essential that a lawyer work with a certain

degree of privacy, free from intrusion by opposing parties and
their counsel." *Id.* at 510. Work product may include facts and
legal theories reflected in "interviews, statements, memoranda,
correspondence, briefs, mental impressions, personal beliefs,
and countless other tangible and intangible ways." *Id.* at 507-
10. The work-product doctrine is a qualified immunity designed
to "balance the needs of the adversary system to promote an
attorney's preparation against society's general interest in
revealing all facts relevant to the resolution of a dispute." *In
re Sealed Case*, 856 F.2d 268 at 273 (D.C. Cir. 1988)("*In re
Sealed Case II*") (*citing In re Subpoenas Duces Tecum*, 738 F.2d
1367, 1371 (D.C. Cir. 1984)).

Federal Rule of Civil Procedure 26(b)(3) partially codifies
the work-product doctrine, stating:

> Ordinarily, a party may not discover documents and
> tangible things that are prepared in anticipation of
> litigation or for trial by or for another party or its
> representative (including the other party's attorney,
> consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A). Nevertheless, a court may order the
disclosure of such material when the requesting party can show a
"substantial need" for the material and an inability to procure
equivalent information "without undue hardship." Fed. R. Civ. P.
26(b)(3)(A)(ii); *In re Sealed Case*, 856 F.d at 273 (*citing
Upjohn v. United States*, 449 U.S. 383, 399-401 (1981)). When
ordering such a disclosure, a court must still "protect against

disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The party asserting the work-product protection carries the burden first of showing that the communications at issue were prepared in anticipation of litigation. The burden then shifts to the party seeking discovery for a showing of "substantial need" and the "undue hardship" of securing the information from other sources. *See, e.g. Kent Corp v. NLRB*, 530 F.2d 612, 623-24 (5th Cir.), *cert. denied*, 429 U.S. 920 (1976). "The showing of need required to discover another party's work product depends on whether the materials at issue constitute "fact" work product or "opinion" work product." *U.S. v. Clemens*, 793 F. Supp.2d 236, 244 (D.D.C. 2011) (*citing In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982) ("*In re Sealed Case I*") (noting there is a "qualified protection for 'fact' work product and more absolute protection for 'opinion' work product").

**(b)   Discussion**

Plaintiff argues that protecting all communications with a non-party in anticipation of litigation would "transform the work-product doctrine into a carte blanche protection for all communications in litigation——including those devoid of strategy or opinion, as well as those in which a non-party might, unprompted, send correspondence to a party to provide facts or

11

other relevant views." Pl.'s Mem. Supp., Docket No. 121 at 10.
Electrolux argues that the communications at issue, even the
portions drafted exclusively by non-parties, are protected as
work product under the plain language of Rule 26(b)(3)(A) and
*Hickman.* Def.'s Mem. Opp. at 6 (noting that Rule 26(b)(3)(A)
protects documents prepared in anticipation of litigation . . .
"for [a] party or its representative" not just by the party or
its representative).

Electrolux points to one opinion of this Court, *Clemmons v.
Academy for Educational Development*, in support of its position.
300 F.R.D. 6 (D.D.C. 2013). In *Clemmons*, the work-product
doctrine was held to protect draft witness statements and
communications relating to those draft witness statements. *Id.*
at 8. The requesting party argued the material was not work
product because it was (1) factual and (2) shared with third-
party witnesses that plaintiff's counsel did not represent. *Id.*
*Clemmons* rejected these arguments, holding that "although the
case law is not unanimous that such materials are covered by the
work product doctrine, the more persuasive line of cases find
that they are." *Id.* (citing *Randleman v. Fidelity Nat'l Title
Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008)(holding that
draft affidavits and communications with counsel relating to
affidavits are covered by the work-product doctrine) (other
citations omitted). Notably, all authorities cited by *Clemmons*

address the issue whether affidavits or draft affidavits are protected by the work-product doctrine. *See*, e.g. 8 WRIGHT, MILLER, MARCUS, § 2024, at 510, n. 23 ("Recent cases have generally held that draft affidavits and communications with counsel relating to affidavits, are covered by the work-product rule.")

Plaintiff rightly notes that whether witness statements and related communications should be protected is not at issue in this case because "Electrolux has acknowledged that it has not communicated with non-parties about witness statements or declarations, draft or otherwise." Pl.'s Rep. Mem., Docket No. 118 at 4-5. The question posed is whether **all** communications in anticipation of litigation between counsel for Electrolux and non-parties should enjoy a blanket protection under the work-product doctrine.[4]

Although it is feasible that ***some portion*** of the communications at issue may rise to the level of either ordinary or opinion work product, the claim that ***all*** communications at

---

[4] Some Courts have explicitly ruled that the work-product doctrine does not apply to material prepared by disinterested third parties. *See, e.g. Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66 (S.D.N.Y. 2003) ("The work product doctrine has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.") (quoting *Polycast Tech. v. Uniroyal*, No. 87 Civ. 3297, 1990 U.S. Dist. LEXIS 12444 (S.D.N.Y. Sept. 20, 1990)).

issue fall within the scope of the work-product doctrine's protective arms is highly suspicious. [5] "Under Hickman, [], the question is not who created the document or how they are related to the party asserting work-product protection, but whether the document contains work product——the thoughts and opinions of counsel developed in anticipation of litigation." *U.S. v. Deloitte LLP*, 610 F.3d 129 (2010). The D.C. Circuit has rejected the argument that a lawyer's notes are *always* work product as a proposition that "goes too far." *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997). Further, courts must determine what constitutes "fact" versus "opinion" work product, a task that can be "frustrating and perplexing," and one for which the D.C. Circuit has yet to articulate "the degree of selection necessary to

---

[5]   The Government argues that to the extent Electrolux shared work product with the non-parties, it has waived its right to protect the secrecy of its communications under the work-product doctrine. However, "while voluntary disclosure waives the attorney-client privilege, it does not necessarily waive work-product protection." *U.S. v. Deloitte LLP*, 610 F.3d 129, 149 (D.C. Cir. 2010) (citing *U.S. v. Am. Tel. & Tel. co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). Disclosure of work product to a third-party constitutes waiver where "such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Id.* (citations omitted). Applying the "maintenance of secrecy" standard in this case would require additional briefing from the parties to satisfy the Court that it has all the information necessary to fairly adjudicate whether Electrolux has waived its work-product privilege. *Id.* at 141 (noting that the maintenance of secrecy standard is "fact intensive").

transform facts into opinions . . . ." *Clemens*, 793 F.Supp.2d at 245 (*citing Florida House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 947 (11th Cir. 1992); *see also Office of Thrift Supervision*, 124 F.3d at 1308.

Alas, the Court cannot proceed intelligibly with further analysis of the documents in dispute because Electrolux has not submitted a privilege log in support of its position. Electrolux has not met its burden of showing the documents at issue were created in anticipation of litigation simply because its counsel represents as much in its opposition memorandum. 8 WRIGHT, MILLER, MARCUS, § 2023 at 492 ("Under Rule 26(b)(5)(A), a party must provide some specifics about material withheld as work product."). Moreover, Electrolux's counsel should be well aware that disputes about the application of privileges and immunities are often resolved through *in camera* review. *See e.g.*, *Deloitte*, 610 F.3d at 328 (remanding to District Court to "examine the document *in camera* to determine whether it is entirely work product"); *In re Sealed Case*, 29 F.3d 715, 718 (D.C. Cir 1994) (same). In light of Electrolux's strong advocacy for a November 9, 2015 trial date, common sense and full confidence in its legal argument should have prompted the voluntary submission of the documents at issue for the Court's *in camera* review.

Nevertheless, because the Court takes seriously the necessity to protect the "mental impressions, conclusions,

opinions, or legal theories" of counsel in this litigation,
Plaintiff's motion to compel is **GRANTED under the following
conditions:**

1. Electrolux shall produce all documents responsive to
   Document Requests 1 and 30 from Plaintiff's First Request
   for Documents and Document Request 1 from Plaintiff's
   Second Request for Documents;

2. Electrolux may redact any portion of any communication it
   deems protected by the work-product doctrine;[6]

3. Electrolux shall submit to the Court for *in-camera*
   review, no later than 12:00 p.m. on Monday, September 28,
   2015, two un-redacted copies of all responsive
   communications withheld on the basis of work product.
   Electrolux shall also submit a privilege log explaining
   the rationale behind each redaction and whether,
   consistent with the law of this Circuit, the redacted
   portions should be considered "fact" work product or
   "opinion" work product. *See e.g. Clemens*, 793 F. Supp.2d
   at 245 (noting that "the Court is not without guidance on
   the issue" of determining "the contours of 'fact' and
   'opinion' work product").

Assertions of fact or opinion work product that are not
supported by the law of this Circuit will result in significant
monetary and other sanctions. Fed. R. Civ. P. 11(c)(3). Further,
the November 9, 2015 trial date will be postponed as necessary
in light of the time required for the Court's *in camera* review
of the communications at issue.

   **2. Contract-channel bidding documents from Messrs. Scully,
   Graham and Mooney.**

---

[6] If Electrolux maintains its position that the entirety of all
communications are protected by the work-product doctrine,
Electrolux shall produce only its privilege log to Plaintiff.

Bryan Scully, Chris Graham and Kevin Mooney are "zone managers" for Electrolux's contract sales in the United States. Pl.'s Mem. Supp. at 14. Based on documents already produced, Plaintiff has reason to believe that these three individuals are directly involved in Electrolux's competition with General Electric for contract-channel purchasers. *Id.;* Exs. G, M, S, T, and Z. Plaintiff seeks documents in Messrs. Scully, Graham and Mooney's possession relating to bidding or negotiations with contract-channel purchasers for the sale of ranges, cooktops and wall ovens. *Id.* at 15. As a result of the parties' Rule 26(f) conference, Plaintiff adjusted the temporal scope of the documents sought from November 3, 2012 – present to January 1, 2014 – present. *Id.* at 15.

Electrolux objects to Plaintiff's addition of three additional custodians beyond the 13 custodians agreed to by the parties in conjunction with their First Set of Document Requests. Def.'s Mem. Opp. at 12; Pl.'s Mem. Supp. at 8. Electrolux argues Plaintiff's "last minute" addition creates an undue burden, while Plaintiff maintains there is nothing untimely about its Second Request for Production of Documents. Def.'s Mem. Opp. at 11; Pl.'s Mem. Supp. at 9.

Contract-channel bidding documents generated from Messers. Scully, Graham and Mooney are relevant to this case, as Plaintiff's main contention is that the proposed acquisition

17

would "end the vigorous and growing head-to-head competition between Electrolux and GE . . . ." Compl., Docket No. 1 at 2. Although it appears Electrolux did not anticipate a Second Request for Production of Documents, its undue burden objections are overstated, as nearly all discovery requests are arguably burdensome under the compressed discovery schedule agreed to by the parties. Plaintiff has compromised and made its request less burdensome by limiting the temporal scope of documents sought. In sum, the documents sought are relevant and Plaintiff's amended request is not unduly burdensome. To the extent Plaintiff's motion seeks to compel production of documents in the possession, custody or control of Messers. Scully, Graham and Mooney that are responsive to Request 6 of Plaintiff's Second Set of Requests for Documents that were created, altered or received on or after January 1, 2014, the motion is **GRANTED**.

**3. Documents related to former CEO Jack Truong and current CEO Keith McLoughlin.**

Plaintiff seeks information related to the current and former CEO of Electrolux through the following requests:

> **Document Request No. 18.** All documents discussing Keith McLoughlin's job performance, his reported resignation, or any consideration or plan to dismiss him from his position with Electrolux, including all documents sent to or from any Electrolux Board member relating to Mr. McLoughlin's job performance or job tenure.

> **Document Request No. 19.** All documents discussing Jack Truong's job performance, his resignation, or any consideration or plan to dismiss him from his position

> with Electrolux, including the employment-separation
> agreement between Jack Truong and Electrolux and all
> documents sent to or from any Electrolux Board member
> relating to Mr. Truong's job performance or job tenure.

Pl.'s First Set of Document Requests, Docket No. 103 at Ex. A.
Mr. Truong is on Plaintiff's Final Witness List and Mr.
McLoughlin is on both Plaintiff and Defendants' Final Witness
List. Pl.'s Rep. Mem. Supp., Docket No. 118 at 12.

Plaintiff argues that Document Requests 18 and 19 are
relevant because they are reasonably calculated to lead to the
discovery of relevant evidence in light of Messrs. Truong and
McLoughlin deep involvement with the company's strategic
decision making regarding competition and Electrolux's proposed
acquisition of GE's appliance unit. Pl.'s Mem. Supp. at 18.
Moreover, because Mr. Truong resigned during the course of
Plaintiff's investigation and Mr. McLoughlin's tenure has been
uncertain, Plaintiff argues the circumstances suggest that the
Electrolux Board members have likely discussed Messrs. Truong
and McLoughlin in the context of Electrolux's competitive
strategy. *Id.*

Electrolux argues that it has already complied with a
significant portion of these requests by producing Mr. Truong's
separation agreement and performance evaluations of Mr. Truong
and Mr. McLoughlin. Def.'s Mem. Opp., Docket No. 117 at 16. To
the extent Electrolux's Board of Directors may have other

relevant information, Electrolux argues Plaintiff's request is overly burdensome because the board members are not company employees with company e-mail addresses. *Id.* Further, Electrolux maintains that discussion among Board members about the performance of Mr. Truong and Mr. McLoughlin is unlikely to be probative of whether the proposed merger will decrease competition in the markets alleged. *Id.* at 17. Plaintiff insists that Electrolux has only produced Troung's separation agreement and further argues that Electrolux's undue burden objections are overstated because it has already collected potentially relevant documents from Electrolux's Board member in order to respond to other document requests. Pl.'s Rep. Mem. at 12.

Document Requests 18 and 19, as written, are overly broad. Plaintiff argues that the requests are reasonably designed to lead to the discovery of relevant evidence pertaining to Messrs. Troung and McLoughlin's position on Electrolux's strategy generally or the acquisition at issue specifically, but the requests seek "all documents" discussing Messrs. Troung and McLoughlin's job performance. On the other hand, Electrolux's burden argument appears overstated since it has searched the board members' files in order to respond to other document requests. Pl.'s Rep. Mem. at 12. For these reasons, Plaintiff's motion to compel production of documents in response to Document

Requests 18 and 19 is **GRANTED in part** and **DENIED in part**, as follows:

1. To the extent Plaintiff seeks to compel production of documents in response to Document Requests 18 and 19 that specifically relate to Messrs. Troung and McLoughlin's involvement with or views on Electrolux's competitive strategies, including Electrolux's acquisition of GE's appliance unit, the motion is **GRANTED**;

2. In all other respects, the motion is **DENIED**.

**4. Employment related information pertaining to Electrolux employees who are listed on preliminary trial witness lists.**

Finally, Plaintiff moves to compel production of employee documents for individuals who are listed on the parties' preliminary witness lists:

> **Document Request No. 4.** All documents relating to statements of work performed, performance evaluations, bonus requests or justifications, or bonus recommendations for all or any part of 2014 or 2015 for each Electrolux employee on Defendants' or Plaintiff's Preliminary Witness Lists dated August 7, 2015.

Pl.'s Sec. Set of Doc. Req., Docket No. 103, Ex. B. Plaintiff argues that the documents sought are relevant because they provide basic information about the scope of the witness's knowledge relating to Electrolux's competitors. *Id.* at 17. Plaintiff has agreed that Electrolux need not produce any "documents that contain sensitive evaluative information." *Id.*, Ex. J. Electrolux argues that responding to the document request "would entail significant burdens while yielding information that is duplicative and of marginal relevance." Def.'s Mem. Opp., Docket No. 17 at 15.

21

As with Document Requests 18 and 19 (from Plaintiff's First Set of Document Requests), Document Request 4 (from Plaintiff's Second Set of Document Requests) is overly broad to the extent it seeks "all" employment documents rather than those related to the employee's involvement with or knowledge of Electrolux's competition strategy in generally or the proposed acquisition at issue. As such, Plaintiff's motion to compel production of documents in response to Document Request No. 4 is **GRANTED in part** and **DENIED in part** as follows:

1. To the extent Plaintiff's motion seeks to compel the production of documents from Electrolux employees on the parties' witness lists that discuss or refer to Electrolux's competition strategy generally or Electrolux's acquisition of GE's appliance unit specifically, the motion is **GRANTED**;

2. In all other respects, the motion is **DENIED**.

**3. CONCLUSION**

For all of the reasons discussed above, the parties' motions to compel are **GRANTED in part** and **DENIED in part**. An appropriate order accompanies this Memorandum Opinion.


Signed:       **Emmet G. Sullivan**
              **United States District Judge**
              **September 25, 2015**