UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) Civil Action |
| | ) No. 15-309 |
| **v.** | ) |
| | ) October 14, 2015 |
| **AB ELECTROLUX, et al.,** | ) 11:10 a.m. |
| | ) |
| **Defendants.** | ) Washington, D.C. |
| | ) |
| | ) |

*TRANSCRIPT OF STATUS CALL PROCEEDINGS*
*BEFORE THE HONORABLE EMMET G. SULLIVAN,*
*UNITED STATES DISTRICT COURT JUDGE*

APPEARANCES:

For the Plaintiff:     **Ethan Glass, Trial Attorney**
U.S. DEPARTMENT OF JUSTICE
450 Fifth Street, NW
Room 4000
Washington, DC 20001
(202) 305-1489
Email: Ethan.glass@usdoj.gov

**Nina Hale, Trial Attorney**
U.S. DEPARTMENT OF JUSTICE
450 Fifth Street, NW
Room 4000
Washington, DC 20001
Email: Nina.hale@usdoj.gov

**Bill Jones, Trial Attorney**
U.S. DEPARTMENT OF JUSTICE
450 Fifth Street, NW
Room 4000
Washington, DC 20001
Email: Bill.jones@usdoj.gov

**Lisa Scanlon, Trial Attorney**
U.S. DEPARTMENT OF JUSTICE
450 Fifth Street, NW, Room 4000
Washington, DC 20001
Lisa.scanlon@usdoj.gov

APPEARANCES:   Cont.

For Defendant:          **John M. Majoras, Esq.**
(AB Electrolux)         JONES DAY
                        51 Louisiana Avenue, NW
                        Washington, DC 20001-2113
                        (614) 281-3835
                        Fax: (202) 626-1700
                        Email: Jmmajoras@jonesday.com

                        **Paula W. Render, Esq.**
                        JONES DAY
                        77 West Wacker Drive
                        Chicago, IL 60601
                        (312) 269-1555
                        Email: Prender@jonesday.com

                        **Kristen A. Lejnieks, Esq.**
                        JONES DAY
                        51 Louisiana Avenue, NW
                        Washington, DC 20001-2113
                        (202) 879-3939
                        Fax: (202) 626-1700
                        Email: Kalejnieks@jonesday.com

For Defendant:          **Paul H. Friedman, Esq.**
(General Electric       DECHERT LLP
Company)                1900 K Street, NW
                        Suite 1200
                        Washington, DC 20006
                        (202) 261-3398
                        Fax: 202-261-3333
                        Email: Paul.friedman@dechert.com

                        **Paul T. Denis, Esq.**
                        DECHERT, LLP
                        1900 K Street NW
                        Suite 1200
                        Washington, DC 20006
                        (202) 261-3430
                        Fax: (202) 261-3333
                        Email: Paul.denis@dechert.com

APPEARANCES:   Cont.

Court Reporter:                **Scott L. Wallace, RDR, CRR**
                              Official Court Reporter
                              Room 6503, U.S. Courthouse
                              Washington, D.C. 20001
                              202.354.3196
                              scottlyn01@aol.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1          <u>MORNING SESSION, OCTOBER 14, 2015</u>

2     (11:15 a.m.)

3          THE COURTROOM CLERK:  Your Honor, this is *Civil Action*

4     *15-1039, United States of America versus AB Electrolux, et al.*

5     Will the parties come forward and identify yourselves for the

6     record, please.

7          MR. GLASS:  Good morning, Your Honor.  Ethan Glass on

8     behalf of the United States.  With me at counsel table today are

9     Ms. Nina Hale, Mr. Bill Jones, and Ms. Lisa Scanlon.

10          THE COURT:  All right.  Good morning to everyone.

11          MR. FRIEDMAN:  Good morning, Your Honor.  Paul Friedman

12     from Dechert for General Electric, and with me at counsel table

13     is my partner, Paul Denis.

14          THE COURT:  All right, counsel.

15          MR. MAJORAS:  Good morning, Your Honor.  John Majoras from

16     Jones Day on behalf of Electrolux, along with my colleagues,

17     Paula Render and Kristen Lejnieks.

18          THE COURT:  All right.  Good morning, everyone.  First

19     thing, I'm sorry that I mentioned the word "iPad" at the last

20     hearing.  No one has to go out and buy any iPads.  I was just

21     making a point about technology that a former clerk is a partner

22     at a firm that called and raised about how great it was, great a

23     tool it was during trial, and I had a case that the attorneys

24     wanted to use iPads, and Judge Huvelle ended up trying the case.

25     So, no one has to spend any money on that.  You've already met

1    with Mr. Cramer, the technology, that's great.  Whatever
2    technology you agree on is fine.
3          I was just taken aback a little bit by references to the
4    use of paper during the trial.  I think we've gotten beyond that,
5    to the extent we can.  Of course, paper will be permitted, but I
6    understand you've already bid on technology and met with
7    Mr. Cramer, and if you have any questions I'm sure he can resolve
8    any of those questions or Mark will be absolutely helpful.  He'll
9    be agreeable to helping you as well resolve any technology
10   issues.
11         While I'm talking about technology, is there a need for me
12   to ask Mr. Cramer to step up today to address any concerns that
13   anyone may have?  If so, I think he may be available.
14         MR. GLASS:  Your Honor, we have no questions.
15         THE COURT:  Okay.
16         MR. GLASS:  He's been available to us and very
17   cooperative.
18         THE COURT:  Right, he is.  He's extremely cooperative.
19         MR. MAJORAS:  None from the defense, Your Honor.
20         THE COURT:  All right.  He's very patient, too, with those
21   of us who don't know how to use this stuff.
22         All right.  One thing that I've not been prepared to talk
23   about, but I'm going to raise this first, is with respect to the
24   request for judicial assistance from the Republic of Korea.  As
25   you know, the Court signed a request for records for

1   international systems and requested certain information.  Well,

2   Korea has, let's just say, declined the request and returned the

3   letter of request, returned the originals.  And I'm not sure that

4   counsel was informed of this or not, but -- so we can make

5   copies.  I think what I should do is make a copy of this and have

6   it placed on the docket, but it's essentially a form letter,

7   bears someone's signature.  And they're not going produce the

8   documents.

9        There is -- let's see, in this declaration the declarant

10  says, "If you want to request an order -- for an order to submit

11  documents, you should specify the documents in the request, like

12  name, title, reporting, date, draftsman and others, other

13  information."  So I just raise that now.

14       How would you like to -- how would you like for the Court

15  to deal with that?

16       MR. GLASS:  Your Honor, thank you for bringing this to our

17  attention.  We hadn't received notice of this.  As you might

18  recall from the briefing, the United States, which is actually

19  the central authority -- the DOJ is the central authority for the

20  United States -- we predicted this would happen.

21       THE COURT:  Right.

22       MR. GLASS:  We felt that this was --

23       THE COURT:  I'm not surprised either based on prior

24  instances of this, but --

25       MR. GLASS:  But whatever Your Honor would like to do in

1    different defendants, we think that discovery's good, and if

2    there's an opportunity to get discovery, we're all for it.

3         THE COURT:  Sure.  All right.

4         So I should just post this on the docket?  What's your

5    position on this?  It's kind of a new development.  What would

6    you like the Court to do, if anything?  I don't think I can do

7    much.

8         MR. MAJORAS:  I'm not sure there's much that you can do

9    either, Your Honor, but if you could post it on the docket that

10   would be great so we can see it.  If after reviewing it there's

11   some additional measures, we would suggest we'll raise that

12   immediately, but I'm not seeing it right now.

13        THE COURT:  Right, right.  I actually was made aware of

14   this this morning.  Actually, looking at it, I thought this was a

15   docket stamp on the -- on this docket -- on this report, but

16   actually what happened was it was received by the Court in the

17   latter part of September, and there's a receipt stamp.  So this

18   was not placed on the docket, so you've not seen this at all, but

19   we'll make sure it's posted today.  And if anyone has any

20   thoughts or suggestions, I welcome those thoughts and

21   suggestions.  I'm not sure what else the Court can independently

22   do, though.

23        MR. MAJORAS:  Thank you, Your Honor.

24        THE COURT:  All right.  We'll post this this morning,

25   though.

```
 1          A document was filed this morning.  It's ECF Document 160.

 2   It's Whirlpool Corporation's response to the United States'

 3   statement about standing issues to discuss at October -- at the

 4   October 14th status conference -- actually, I guess it was filed

 5   late last evening.

 6          I don't think that what's addressed in this document is

 7   any longer an issue before the Court, but I'll hear from counsel.

 8          MR. GLASS:  Your Honor, thank you.  So I believe

 9   Whirlpool's counsel is here to answer any questions on behalf of

10   Whirlpool.  I'll maybe just make a --

11          THE COURT:  I mean, should I take a look at the -- should

12   I take a look at the e-mail or --

13          MR. GLASS:  I --

14          THE COURT:  You've asked for a spoliation instruction,

15   though, at some point, haven't you?

16          MR. GLASS:  Yes, Your Honor, but that's on a slightly

17   different issue.

18          THE COURT:  All right.

19          MR. GLASS:  So I think Whirlpool and the United States

20   have a disagreement.

21          THE COURT:  That's right, I stand corrected.  The

22   spoliation addresses something else.

23          MR. GLASS:  Right.

24          THE COURT:  That's right.

25          MR. GLASS:  The Whirlpool and United States have a
```

1　disagreement on how to describe this underlying agreement between

2　defendants and Whirlpool.

3　　　　　THE COURT:  Right.

4　　　　　MR. GLASS:  I don't think that merits time before Your

5　Honor right now.

6　　　　　THE COURT:  All right.

7　　　　　MR. GLASS:  We're going to have a trial.  We're going to

8　have people who are witnesses be able to explain to Your Honor --

9　　　　　THE COURT:  Is that going to be an issue before the Court?

10　　　　　MR. GLASS:  I believe it is, Your Honor.

11　　　　　THE COURT:  I think it's a fairly significant issue, isn't

12　it?

13　　　　　MR. GLASS:  It is, Your Honor.  The fundamental question

14　here is whether or not this merger is going to reduce

15　competition.  If it reduces competition, it benefits the other

16　players in the industry.

17　　　　　THE COURT:  Right.

18　　　　　MR. GLASS:  If one of the significant players in the

19　industry supports or believes that this merger is going to be

20　good for them, I think that bears directly upon the question that

21　Your Honor's going to be asked at trial.

22　　　　　But, again, these are all trial questions, and I don't

23　want to get ahead of ourselves.  And I also --

24　　　　　THE COURT:  Nor do I.  I think I agree with you.  I think

25　it's probably going to be an issue, and I think it is a fairly

1    significant issue that the Court will have to address, indeed,

2    was there an agreement or not.  But each side has a different

3    interpretation of the e-mail, and it probably is a trial issue to

4    be resolved.

5            MR. GLASS:  I believe it is, Your Honor.

6            And what I want to leave here with is, I believe that

7    there were some words in our joint statement that Whirlpool's

8    counsel objected to us using.  And what I want to say is, we

9    weren't trying to describe with immaculate precision what the

10   agreement is.  We actually have the agreement.  We have e-mails

11   around the agreement.  These will all be issues that we can

12   provide Your Honor at trial.

13           The real question was whether or not there were things

14   that were going on between defendants and Whirlpool that the

15   United States had no insight into, until just a few weeks ago.

16   That made it very difficult for the United States to engage in

17   this investigation and its pretrial discovery, and that's the

18   real question before Your Honor today, and that goes to the

19   question about the other e-mails.

20           I think the disagreement with Whirlpool is a question that

21   we can leave for November 9th.

22           THE COURT:  All right.  Thank you, Counsel.

23           Do you agree?

24           MR. MAJORAS:  No, Your Honor, I do not agree.  I think, to

25   the extent that there is interaction between Whirlpool and any of

1    the defendants in this case, if that's an issue for trial, you

2    can rule on it at that time.

3        The objection we have is the way in which this was raised,

4    which is it's not a motion.  It was a -- basically a -- we had

5    this issue, Judge, and then there was a request or at least a

6    mention of sanctions.  And we agree, certainly, that the way that

7    the government characterized the interaction between Whirlpool

8    and Electrolux was inappropriate, was incorrect; certainly that's

9    what the Whirlpool filing indicated to me.

10       But I think the -- to somehow be up here, again, without

11   any full briefing on this issue, if we're going to do it, and

12   make an argument that there's something inappropriate, what this

13   document relates to is the ability of Electrolux's counsel and

14   defense counsel during the investigation to use data from

15   Whirlpool that the government was using, because, of course, that

16   goes back to the issue that they have a process they can serve

17   during the investigation to get that data.  And having an

18   agreement by which that data is available, not to the parties,

19   but to the parties' experts in the case, is certainly one that

20   would be appropriate.  Whirlpool would want that with their data.

21   We understood that.

22       And so to come in and imply that first the DOJ was unaware

23   of that, that's -- that's absolutely incorrect, because I was at

24   a meeting, Mr. Glass was at a meeting, in which the question was

25   specifically asked:  How do you have the data?  And the answer

1    was:  We obtained it from Whirlpool.

2          And there's an e-mail to that effect, so if we need to get

3    into that ancillary issue, we're prepared to.  I don't think it's

4    necessary.  The government has not brought a motion on that, but

5    certainly if they're going to take some type of motion of

6    sanctions on interaction between counsel that would be to the

7    detriment to Electrolux or the defendants, we would absolutely

8    disagree with that and think that there's absolutely no case for

9    that.

10         THE COURT:  All right.  I'm certain that -- I didn't draw

11   any inference from this.  I read it and I thought it was

12   interesting, but let me say this:  If any party is seeking

13   pretrial relief as a result of this revelation of this

14   information, then a party should file whatever request for relief

15   a party wants to file; otherwise, if it's a trial issue, it'll be

16   resolved during the course of other trial issues.  But other than

17   finding it interesting and reading it and finding it interesting,

18   I haven't drawn any inferences or conclusions about it at all and

19   will not do that.

20         MR. MAJORAS:  We agree with that, Your Honor.

21         THE COURT:  All right.  So I don't think there's any

22   need -- thank you for the invitation to review it in-camera, but

23   I don't think there's any need to do that.

24         Yes, Counsel.

25         MR. GLASS:  Your Honor, the only question that the United

1    States has presented for today is whether Electrolux has complied

2    with this Court's orders to produce all of the communications

3    that Electrolux's counsel has had with all nonparties.

4         THE COURT:  All right.  That's not a moot issue, then.

5         MR. GLASS:  That is not a moot issue, Your Honor.

6         Your Honor, if I may, when we received Electrolux's

7    production, we compared it to Whirlpool's privilege log, and

8    there were documents missing from Electrolux's production.  We

9    raised those issues, and Whirlpool was kind enough to produce the

10   missing documents to us.  So what is true is that we have the

11   particular missing documents --

12        THE COURT:  Right.

13        MR. GLASS:  -- but what is still an open issue is why

14   those documents were not preserved and what other documents were

15   not preserved.  I'll remind you, this issue first came up just a

16   few weeks ago.  There's been no logging until Your Honor issued

17   his orders.  We've received some production, but we have serious

18   concerns about the document preservation that was done, and

19   particularly since Your Honor has now ordered these be produced,

20   and we know that there are documents that were destroyed.  Our

21   concern is that we have not had the ability to get the full scope

22   of the documents that Your Honor ordered that be produced.

23        THE COURT:  All right.  What should the Court do?  What

24   are you asking the Court to do at this point?

25        MR. GLASS:  So, Your Honor, we're asking I think a

1   relatively modest request today.  We're asking that Electrolux

2   provide a detailed declaration of what it did to comply with the

3   Court's orders, both the September 25th order and the October 5th

4   order, where it searched, what documents it pulled, what

5   documents it couldn't find, what archives it went to, everything

6   that it did, so that we can understand if there is a concern to

7   raise with Your Honor, and if there is, I think our answer will

8   be based upon whatever comes out of what was missing from

9   Electrolux's production under the court's orders.

10          THE COURT:  All right.

11          What's unreasonable about that, Counsel?

12          MR. MAJORAS:  Well, I think the first thing that's

13   unreasonable about it is that it's not broadened the motion that

14   allows us to respond to the issues.

15          The second is, the DOJ has taken two e-mails -- these

16   aren't -- they're talking about documents.  These are e-mail.

17   There's this a chain of e-mails, which we have, a chain of

18   e-mails which we produced, which Electrolux produced, and in --

19   and apparently in their discussions with Whirlpool there was one

20   additional document on each of those chains, one additional reply

21   e-mail on each of those chains, completely innocuous.  And we're

22   happy to present those to the Court.  One of which was simply a

23   scheduling issue, "Is 10:00 good for you or not," type of an

24   e-mail.

25          So to come in and suggest that we have destroyed documents

1    without identifying what in particular was -- what obligation it

2    was to hold that without briefing to the Court the relevant case

3    law in this jurisdiction as to what needs to be kept, what

4    doesn't need to be kept, especially as a non-substantive

5    document, is taking us on a side show that is unnecessary in

6    light of what we're trying to accomplish here.

7         We have -- the government has those documents.  There's no

8    prejudice whatsoever.  They have not suggested, through either

9    documents they've obtained from other parties or on any other

10   basis, documents that may be missing from our production.  We

11   fully complied with the Court's order.  We submitted in a very

12   short time period a significant amount of documents.  We even

13   submitted for in-camera review if the Court needed to do that.

14   But to now come in and suggest that there's this massive issue

15   that we need to go off and discuss without any briefing or

16   explaining where it comes from, we just don't think it supports

17   it.

18        THE COURT:  All right.  Counsel, should not your oral

19   request be followed up by a written motion?

20        MR. GLASS:  Your Honor, we're happy to provide you with

21   briefing, but we think it's unnecessary.  We've briefed

22   ad nauseam the failure of Electrolux to produce relevant

23   responsive documents.

24        We can go back to Your Honor's case management order,

25   which required Electrolux to produce these exact type of

 1     documents and they didn't.

 2          THE COURT:  Right.

 3          MR. GLASS:  It necessitated us to go through a long

 4     process of meet and confer resulting in a motion to compel that

 5     Your Honor granted.  This history resulted with a production that

 6     is missing documents.  We know it is.  Now, we received those

 7     documents from the nonparty, but that's because Whirlpool is

 8     involved in this case.  They have very competent counsel.  We're

 9     able to work with them.

10          What about all the nonparties where there were other

11     communications that, you know, we're not able to get?  Our

12     concerns are acute on this.  This isn't just a one-off, a

13     mistake, someone accidentally deleted.  These are two separate

14     people with two separate e-mails that were not produced to us.

15     And the only answer that we get from Electrolux is that they had

16     no obligation to preserve these.  And these were documents, these

17     were e-mails that were sent in March and June of this year, well

18     after the merger was announced, well after the United States

19     investigation started.  In fact, well after the United States

20     sent a letter to Electrolux telling it that it needed to preserve

21     documents, even those we didn't ask for, because we might come

22     for them later.

23          In fact, Your Honor, Electrolux has claimed work product

24     privilege going all the way back to beginning of 2015.  The only

25     way -- we all know the only way one can have work product

1    privilege is if they anticipated litigation.  And so the argument

2    that they had no duty to preserve these arguments, their sole

3    argument, is an argument that shouldn't persuade this Court.  It

4    doesn't need any briefing.

5          THE COURT:  All right.  I'll tell you what I'm going to

6    do.  I'm going to request the government to submit to the

7    Court -- in light of this discussion this morning and in light of

8    what the government has raised in prehearing filings -- a

9    proposed order that the government would like the Court to

10   consider, and I'll consider it.

11         I may require the government to make a further request in

12   writing or I may not.  It's clear what the issue is before the

13   Court and what the government's concerns are.  So in an effort to

14   resolve this matter, I'll just request that the government submit

15   a proposed order that it would like the Court to consider.

16         MR. GLASS:  Thank you, Your Honor.

17         And we actually have two other issues --

18         THE COURT:  I know.  I know do.

19         MR. GLASS:  -- that we'd like to treat the same way, but I

20   don't want to --

21         THE COURT:  No, go right ahead, no, no.  Yes.

22         MR. GLASS:  Okay.  So, Your Honor, we filed -- we

23   attempted to do a joint status conference report.

24         THE COURT:  Right.

25         MR. GLASS:  And the defendants didn't get back to us.  And

1    we felt the need to --

2         THE COURT:  I didn't really understand that.  I mean, you

3    tried to schedule a conference with defense counsel?

4         MR. GLASS:  We sent a draft of a joint status conference

5    statement --

6         THE COURT:  Well, it was very annoying to get a joint

7    status report submitted by one party.  I mean, I'm not ignoring

8    what the government did, I just annoyed there wasn't, in indeed,

9    a joint status report.  Go ahead.

10        MR. GLASS:  Yes, Your Honor, and I share your frustration

11   because we sent them a draft of a joint status report over the

12   weekend.  We said, "We have a hearing with Your Honor, and it

13   doesn't make sense for us to come in and raise a whole bunch of

14   issues without providing Your Honor with at least a little

15   preview so Your Honor can think about it and tells us that he

16   wants briefing or tell us that he's not interested."

17        We didn't hear back.  We asked them what their response

18   was going to be.  We asked them to provide it by Monday.  We

19   didn't hear back.  So then we asked them, we told them, "We need

20   to provide Your Honor with the information that we want to

21   discuss at the hearing."

22        And their only response was, "We don't think there's any

23   obligation to do that."  So we went ahead and filed our -- what

24   we attempted to just describe simply -- three issues.

25        In response --

1        THE COURT:  I didn't go back to the record to see whether

2   or not I ordered a joint status report.  I don't think I had.

3        MR. GLASS:  You hadn't.

4        THE COURT:  Yeah.  All right.  Okay.

5        MR. GLASS:  And even though you hadn't --

6        THE COURT:  It would have been helpful.  It probably was a

7   mistake on my part not to do that.  I normally do that for those

8   reasons that you've articulated, to give some thought to issues

9   before they're sprung on me at a hearing.

10        MR. GLASS:  Yes, Your Honor.

11        And so defendants filed a response to that.  The response

12   took issue with all three of our concerns and joined issue.  The

13   first we just discussed, and I don't think merits any more

14   discussion, but the latter two I think are relatively simple and

15   these are ones that I would ask that we include in this proposed

16   order that we'll send Your Honor.

17        THE COURT:  And one deals with the production of a 2012

18   presentation by Jonathan Orszag; is that correct?

19        MR. GLASS:  Yes, Your Honor.

20        THE COURT:  All right.  And my understanding is that

21   defendants claim that either Mr. Orszag or defendants have a copy

22   of the presentation.  That is suspect, to say the least.  The

23   presentation must be accessible by the expert, I would think, but

24   maybe not.

25        I'm going to order the defendants to produce it forthwith.

```
1    I'll hear from defendants.  Maybe they have some explanation for

2    why they can't find it.  I mean, you know what, probably within

3    ten minutes I could probably find it on the Internet, probably,

4    but maybe not.  But anyway, it seems to me that it should be --

5    it should be available, so unless there's some reason why it's

6    not, then I'm going to order the defendants to produce it

7    forthwith.

8         MR. GLASS:  Thank you, Your Honor.

9         THE COURT:  Do you want to be heard on that issue now,

10   Counsel?  Good morning.

11        MS. RENDER:  I would, Your Honor.  Good morning.  Paula

12   Render on behalf of the defendants.

13        Mr. Orszag has looked for the PowerPoint presentation, and

14   he has not found it.  We do not have a copy of it, and it is not

15   something that he relies on in his report.  It's simply one of a

16   lot of other articles and so forth that he has listed in

17   providing his credentials as an expert.  So it's not something

18   he's relying on.  It's not something that he has kept, and so we

19   don't have a copy of it, and he doesn't either.

20        We could have him submit a declaration to Your Honor, if

21   that would be helpful, stating that he does not have a copy of

22   it.

23        THE COURT:  He probably should.  He can't get it off the

24   Internet?  It's a PowerPoint?  When was it last presented?

25        MS. RENDER:  He presented in 2012.
```

1     THE COURT:  Right.  So at that presentation was it not

2  preserved by the audience that he presented it to?

3     MS. RENDER:  I don't think that we understood Mr. Orszag's

4  obligation to call whomever happened to be at that presentation

5  to see if they had a copy of it.  And we certainly have not asked

6  DOJ to do anything like that with regard to any of the expert

7  materials that their experts don't have.

8     THE COURT:  All right.  Well --

9     MS. RENDER:  It's not something he's relying on, so we

10 think this is a bit of a side show.

11     THE COURT:  All right.  Counsel, what do you want me to

12 do?  He doesn't have it.  He wants to file -- I think he should

13 file a declaration, though, Counsel, to let us know what steps

14 he's taken to try and locate it at least.

15     MR. GLASS:  Your Honor, this -- there's a -- the theme

16 amongst these three is that if it's not in front of Electrolux,

17 they don't produce.  And my concern here is that with a little

18 bit of effort Mr. Orszag will be able to get a copy of this.  And

19 I don't want to be left that this is a side show.

20     This is a paper that Mr. Orszag -- or a presentation,

21 we're not exactly sure -- that Mr. Orszag has put on his CV.

22 It's on his Website.  It's also -- it's title is directly

23 relevant to one of the tools that Professor Winston, the United

24 States' economic expert, is using.  It's -- and a coincidence,

25 perhaps, that a 2012 document is now lost to history.

1          But, Your Honor, our concern is that the efforts to locate

2     it have been limited, and with a limit bit more effort we'll be

3     able to find it; and time is of the essence.

4          THE COURT:  Right.  Do you want to depose him on this

5     point?

6          MR. GLASS:  Well, Your Honor, we are, so we have a --

7          THE COURT:  But you'd you like to have that before you

8     depose him, too, wouldn't you?

9          MR. GLASS:  Yes, Your Honor.  I mean --

10         THE COURT:  When's his deposition scheduled?

11         MR. GLASS:  It's scheduled for the 28th, Your Honor.

12         THE COURT:  What would you like --

13         MR. GLASS:  Excuse me, the 27th.

14         THE COURT:  What would you like for the Court to do?

15         MR. GLASS:  Your Honor, we would like an order compelling

16    them to produce it.  It's as simple as that.  It was presented to

17    a particular audience.  They could call the organizer and say

18    we'd like to have a copy of it.  And if he goes through efforts,

19    reasonable efforts, and it still can't be found, if this document

20    has been unintentionally destroyed, we would like to come back to

21    Your Honor and ask Your Honor, perhaps, here's yet another thing

22    that mysteriously has disappeared that is directly relevant to

23    our case.

24         THE COURT:  Right.  All right.  I'll order him to produce

25    it.  Submit an order, and I'll be happy to sign it forthwith.

1          MR. GLASS:  Thank you, Your Honor.

2          So the third thing, Your Honor.

3          THE COURT:  Right.  The third issue, I thought that was

4     resolved.  That dealt with the documents that have been

5     previously called back; is that correct?

6          MR. GLASS:  Yes, Your Honor.  I'm not excited about doing

7     this, but, Your Honor, may I mark an exhibit and provide you with

8     some documents?

9          THE COURT:  Sure.

10          MR. GLASS:  Your Honor, I'm marking as Exhibit 1, the

11     production that Electrolux purportedly gave us.

12          THE COURT:  You don't need to submit a proposed order for

13     that last point.  I'm just going to issue an order today

14     requiring the expert to forthwith produce that document.

15          You want a declaration also?

16          MR. GLASS:  Your Honor, only if he can't find it.  I mean,

17     we just want the document.

18          THE COURT:  All right.  All right.  And that will be in

19     the alternative.  In the alternative, if the declarant -- if the

20     expert is unable to produce the document, he needs to detail with

21     specificity the efforts he's made to obtain a copy of the

22     document.

23          MR. GLASS:  Thank you, Your Honor.

24          THE COURT:  Any other language you want in there?

25          MR. GLASS:  That's great.

1          THE COURT:  All right.

2          MR. GLASS:  Thank you, Your Honor.

3          THE COURT:  Sure.

4          MR. GLASS:  May I approach?

5          THE COURT:  Sure.  Oh, may I stop you.

6          MR. GLASS:  Yes, Your Honor.

7          THE COURT:  I just remembered something, the two copy

8   rule.  Anything that's -- if this case goes to trial, anything

9   that's prepared, binders, exhibits whatever, I need two copies of

10  everything from everyone.  All right.  Thank you.  That's

11  extremely helpful.  It gets very confusing in a small office in a

12  small office if I'm taking exhibits or pleadings or my law clerk

13  is taking, so thank you for passing up a copy for my law clerk.

14  So that's the two copy rule for everyone.  Okay?

15         MR. GLASS:  Absolutely, Your Honor.

16         THE COURT:  All right.

17         MR. GLASS:  And would you like us to mark the clerk's copy

18  and Court copy?

19         THE COURT:  That would be fine.  That'll be perfect.

20  Thank you.

21         MR. GLASS:  Okay.  So, Your Honor, we raised this issue in

22  our statement.

23         THE COURT:  Yes.

24         MR. GLASS:  In their response defendant said -- and I'm

25  quoting from page 2 of docket entry 156, "Electrolux has already

1   agreed to provide the clawed back document, ELX00039641 to

2   ELX00039642, and any documents of the same subject matter, and in

3   fact, has already done so."

4        That was news to us.  So we asked Electrolux, "Where was

5   that production?"

6        The production had not yet come when this was filed.  They

7   directed us to a subsequent production, which I've just handed

8   Your Honor.  Your Honor, if you could just peruse, you'll notice

9   that every page has redactions on it.  There's almost no

10  information in this entire document.  This was the production of

11  the clawed back document and any documents of the same subject

12  matter.

13       Your Honor, this, of course, is of no help to the United

14  States.  They might as well have produced blank pages marked

15  confidential and Bates stamped it.

16       So, Your Honor, we're just asking something simple here:

17  We would like the document that they said they would produce,

18  ELX00039641 to ELX00039642, as well as unredacted copies of the

19  ten documents that they claimed to have produced to us.

20       THE COURT:  All right.  Counsel.

21       MS. RENDER:  First, Your Honor, we did produce the

22  documents, and we did produce it prior to our filing.  We first

23  attempted to send it via FTP and there were technical

24  difficulties, and so then we sent the document by e-mail.  So DOJ

25  does, indeed, have 39641 through 42.  We have sent it.

1          We also --

2          THE COURT:  But there's nothing on these pages, though.

3          MS. RENDER:  And --

4          THE COURT:  I mean, unless I'm overlooking something,

5     there's nothing there.

6          MS. RENDER:  Right.  I don't think DOJ has offered you

7     396341 through 42.

8          THE COURT:  All right.  What about the documents that

9     counsel was just discussing?  I want to focus on those.

10         MS. RENDER:  These documents are documents that contained

11    a number of pages, and each of these documents included the same

12    spreadsheet that we had already produced to DOJ.  The rest of the

13    documents are privileged, and so we produced them in redacted

14    form with a log, but we had already produced the spreadsheet, and

15    it's the same spreadsheet.

16         THE COURT:  Counsel.

17         You can stay there, Counsel, if you'd like.

18         MS. RENDER:  Okay.

19         MR. GLASS:  Your Honor, I don't think I have anything more

20    to add, other than we raised the issue that Mr. Orszag was

21    relying upon a document that Electrolux had clawed back his

22    privilege.

23         THE COURT:  Right.

24         MR. GLASS:  Of course, that means that we're not only

25    entitled to that document, but we're entitled to all documents on

```
1    the same subject matter.

2         THE COURT:  Right.

3         MR. GLASS:  Because we want to be able to examine the full

4    evidence in our ability to rebut and cross-examine Mr. Orszag.

5    We raised this with defendants.  Defendants told us that they

6    would comply.  They told Your Honor they had complied, and this

7    is the production.

8         THE COURT:  Right.  Counsel.

9         MS. RENDER:  We have produced the spreadsheet.  We have

10   produced 39641 [sic] through 42.  The DOJ has that.  We can

11   provide the e-mail in which we transmitted that.  I don't have it

12   here today.  So I don't know what else we have to produce at this

13   point.

14        THE COURT:  Right.  So what would the order say, Counsel?

15        MR. GLASS:  Your Honor, we just are saying a simple order

16   saying that the documents -- and I give you the Bates number

17   range now -- be produced in unredacted form.

18        I mean, it was a surprise to me personally, Your Honor,

19   that when they said they would give us documents of the same

20   subject matter, they produced 169 documents that are almost

21   completely redacted.

22        THE COURT:  I'm missing something here.  Something's I'm

23   missing here.  You say you've produced everything.  The

24   government says they don't have anything.

25        MS. RENDER:  We produced the spreadsheet that they asked
```

1    for.

2           THE COURT:  Right.

3           MS. RENDER:  And, again, I can submit the e-mail and show

4    the Court that we did, indeed, produce that spreadsheet.  That

5    spreadsheet was contained within these documents, and so we

6    produced these documents, redacted the privileged information,

7    and we made it clear that the -- we had provided the actual

8    spreadsheet itself.

9           So I think the only thing that -- additional thing that we

10   could do would be to produce these documents with the actual

11   spreadsheet showing in the appropriate place within these pages.

12   We could certainly do that and see if that would be a way of

13   resolving the dispute.

14          THE COURT:  Is that satisfactory or not?  I don't think

15   so.

16          MR. GLASS:  Your Honor, so let's be clear.

17          THE COURT:  Well, that -- that's right.  I agree, because

18   there's something I'm missing here.

19          MR. GLASS:  Yeah, no, I can understand why Your Honor

20   is --

21          THE COURT:  You're claiming you're missing something, and

22   I'm missing something, too.

23          MR. GLASS:  Yeah.

24          THE COURT:  The defendants claim they've submitted

25   everything.

1      MR. GLASS:  Yes, Your Honor.

2      THE COURT:  So --

3      MR. GLASS:  So what Mr. Orszag --

4      THE COURT:  -- one of us is wrong, I think, or two of us

5  may be wrong.

6      MR. GLASS:  So --

7      THE COURT:  Something's not crystal clear.

8      MR. GLASS:  -- whether they produced the document ELX --

9      THE COURT:  Tell me this:  If you were me and you were

10  inclined to grant the relief that the government's making, what

11  would the order say --

12      MR. GLASS:  So, I think, Your Honor --

13      THE COURT:  -- that it has not already said?

14      MR. GLASS:  Yes, Your Honor.  So perhaps I'll be so bold

15  as to say, Electrolux is hereby ordered to produce the documents

16  Bates numbered ELX00887431 --

17      THE COURT:  Right.

18      MR. GLASS:  -- through ELX00887599 without any redactions.

19  And if document ELX00039641 through ELX00039642 has already been

20  produced, but with redactions, it must be reproduced without

21  redactions.

22      THE COURT:  Any objections?

23      MS. RENDER:  Yes, Your Honor.  We have produced the 39641

24  through 42 without any redactions.  We can produce -- we are

25  happy to reproduce the documents in the Bates range that

1    Mr. Glass just read, with that spreadsheet showing at the

2    appropriate page.  But the only document that Mr. Orszag relied

3    on was the spreadsheet that is contained in the two pages, 39641

4    through 42, and DOJ has made no showing that they're entitled to

5    invade our privilege with respect to any of the other pages of

6    these documents.  If they want to make that showing, then they

7    ought to file a motion and make that showing, but there's --

8    Mr. Orszag relied on the spreadsheet at 39641, 42.  We've

9    produced it.  If they want additional copies of that, we're happy

10   to produce those as well, but there's no basis here to invade the

11   privilege.

12        THE COURT:  All right.  Counsel?  I mean, it sounds like a

13   privilege issue that the Court will ultimately have to resolve,

14   if they're relying on privilege, and will not produce anything

15   but redacted copies.  I mean, is that a privileged issue that the

16   Court will have to resolve sooner than later?

17        MR. GLASS:  Perhaps, but unfortunately, Your Honor, we're

18   running out of time.  I mean --

19        THE COURT:  I know you are, and I'm sensitive to that.

20        MR. GLASS:  Under the expedited schedule that defendants

21   have insisted upon, we're now being squeezed in our ability to

22   properly prepare our case in a number of ways.  And this is just

23   one of them.  We talked about some others earlier today.  There

24   are others that don't merit bringing to the Court's attention.

25        THE COURT:  Well, no one should feel as though -- no party

should feel as though the party's being treated unfairly.  That's

not going to happen in this courtroom, and everyone should know

that.  So if there are problems, you know, let me know what the

problems are.  I'll resolve them in a timely matter.  And, look,

if I have to postpone the trial, I'll do that.  But no one's

going into trial thinking, you know what, I wasn't treated

justly.  That's not going to happen.

MR. GLASS:  I sincerely appreciate that, Your Honor.  And

I do have to tell you that defendants withheld critical

information throughout discovery, throughout our investigation,

information about the relationship with Whirlpool, information

about what was going on with the former president, Mr. Truong,

and now information that relates to the same subject matter as

Mr. Orszag is relying on.

It seems to me a classic sword shield problem, that they

provide Mr. Orszag with privileged material, renders a basis

opinion on it, and then they don't provide us all the material on

the same subject matter and give us the ability to do our

cross-examination.  And I'm afraid that this is the last --

perhaps the last time we're going to see Your Honor before the

pretrial conference.

THE COURT:  Well, I'm available.  The Court's available,

and I'll schedule hearings as appropriate to deal with matters.

I mean, you have depositions coming up.

His deposition is scheduled for when, the 28th?

1          MR. GLASS:  Mr. Orszag is the 27th.

2          THE COURT:  27th.

3          MR. GLASS:  And our rebuttal report is due the 20th.

4          MS. RENDER:  Your Honor, if I may respond?

5          THE COURT:  Sure, absolutely, sure.

6          MS. RENDER:  This idea that there's a pattern of

7    Electrolux hiding documents is something that the DOJ is very

8    eager to present to Your Honor.  I think we've actually been

9    extremely forthcoming.  We withheld documents that we believed

10   were work product, and we're entitled to do that, but given the

11   press of time, we made the decision that we would produce all of

12   those documents, all kinds of work product.  We just turned it

13   over without withholding any of it, after the order, and they

14   have all that now.

15        What case, what merger case have you ever heard of where

16   the DOJ had all of the defendant's work product?  They have that.

17   DOJ comes in and says, "They have withheld critical e-mails."

18   They haven't made a showing that those are critical e-mails.

19        *Zubulake* and all the cases that have really dealt with the

20   preservation obligation make it clear:  You're not obligated to

21   keep every single e-mail.  You're obligated to keep evidence

22   that's relevant to your case.

23        They haven't made a showing that those e-mails are

24   relevant to our case.  They haven't made a showing that any of

25   these specters they're presenting to Your Honor are real, or

1    founded on anything other than insinuation and accusations.

2         So we gave them all the work product.  We gave them this

3    document.  And I'll tell you right now, Your Honor, the reason

4    that we gave this document to Mr. Orszag, and having already

5    called it back, was just inadvertent.  Our associates are working

6    long and hard and they're doing a great job and this one was just

7    inadvertent that we gave this document to Mr. Orszag, and as soon

8    as we realized we had done that, we gave them the document.

9         So I -- this idea that we're withholding things, they have

10   more information from defendants, from Electrolux, than they ever

11   have in any case.

12        And I would take issue with this:  If Your Honor is going

13   to take a proposed order from DOJ regarding those issues, we

14   would like to have -- we would like to take Your Honor's

15   invitation that no one's going to be treated unfairly here, to

16   present the authorities that show what you have to preserve and

17   what you don't and why these did not have to be preserved.

18        THE COURT:  That's fine, that's fair enough.

19        MS. RENDER:  Thank you.

20        THE COURT:  And I'll do that, but I need to do it on a

21   short turnaround, so I'll do that.  I'll issue an order today,

22   and give Electrolux a short period of time within which to

23   respond.

24        And I'm available to schedule hearings as appropriate.

25   It's not like I don't have other matters, but I'll find the time.

1          And, again, you know what, the trial date has been set,

2     and everyone's geared up toward it, and I know everyone's working

3     hard, and I can imagine what it's like in the firms and at DOJ,

4     weekends and nights.  I know it's rough on everyone.

5          But, again, you know, I'll schedule hearings as

6     appropriate to deal with these very sensitive issues, and no

7     one's going to be treated unfairly.

8          I'll issue that order today.  With two days for a

9     response?  Today's Wednesday.

10          MS. RENDER:  That's fine.

11          THE COURT:  Do you want a chance to reply?  I mean, I hate

12     to tie up your weekend, but there's only so many days in a week.

13     What do you want me to do?  I'll issue an order today.  In fact,

14     I'll just -- the order's issued.  I mean, that's the language I'm

15     going to use.  I'll reduce it to writing and electronically post

16     it, but that's it.

17          So noon on Friday?

18          MS. RENDER:  Thank you, Your Honor.

19          THE COURT:  All right.  And for a reply?

20          MR. GLASS:  Monday.

21          THE COURT:  Monday, sure.  At noon?

22          MR. GLASS:  Yes, Your Honor.

23          THE COURT:  All right.  That's fine.  And I'll schedule a

24     hearing as appropriate if necessary.  Otherwise, you know, don't

25     save your best argument for the oral argument.  There may not be

1    one, but -- and you won't do that.  But I'll address it.  I

2    understand your point.  I understand both sides on that.

3          MR. GLASS:  And, Your Honor, may I just -- will you

4    indulge me for one moment?

5          THE COURT:  Yeah, sure.

6          MR. GLASS:  I know you have a busy schedule.

7          THE COURT:  Yeah.

8          MR. GLASS:  It's an overrepresentation to say they've

9    given us all their work product.  Instead, all they've given us

10   are communications with nonparties.  That's all we asked for from

11   the beginning.  That's all they've given us.

12         What they've set up is a claim that had no merit that

13   deprived us from important information for the entire length of

14   our investigation and discovery.  The first that we received of

15   these nonparty communications alerting us to serious issues,

16   issues that we brought before Your Honor, issues relating to

17   Mr. Truong, issues relating to Whirlpool.  The first we knew

18   about this was at the close of fact discovery.

19         Your Honor, this isn't a case in which we're asking for

20   something immaterial and we're asking Your Honor to just impose

21   sanctions.  These are important, critical pieces of evidence that

22   we have been deprived of, while they've had all along, for us to

23   prepare --

24         THE COURT:  Is there a need for the Court to reopen fact

25   discovery?

```
 1        MR. GLASS:  Your Honor, I just don't know if there's time.

 2   I mean, we're conducting expert discovery, and we've got pretrial

 3   process.  I mean, it's --

 4        THE COURT:  Again, if I have to move the trial date, I'll

 5   do it.  You know, if I find some fault there, I'll do it.

 6        So, I mean, all options are available.  Let's just see

 7   what happens.  I'll give you a chance to file a response, and

 8   I'll resolve this in a timely manner.

 9        MR. GLASS:  Thank you, Your Honor.

10        THE COURT:  You know, something tells me I'm going to have

11   to bring you back anyway, so what makes sense?  Let's schedule

12   another status hearing on the 21st at 10 a.m.  That's a week from

13   today.  And if I need to resolve matters in open court, I'll do

14   that.  Whatever matters need to be resolved at that time, I'll do

15   so.

16        MR. GLASS:  Your Honor, may I ask for an amendment?

17        THE COURT:  Sure.

18        MR. GLASS:  Can you also order a joint status report?

19        THE COURT:  I'll do that.  Yes.  And -- yes.  No, thank

20   you for reminding me.  Those are extremely helpful, and, quite

21   frankly, I forgot to do it the last time.  I'll just say by

22   9 a.m. on the 20th, the day before.  All right.

23        Yes, Counsel.

24        MR. MAJORAS:  Your Honor, I'm going raise one additional

25   issue we had.
```

```
1          THE COURT:  Wait a minute.  Let me finish with this one.
2          All right.  So you have the briefing schedule noon on --
3    all right.  Okay.  That's fine.
4          You're not making representations about this particular
5    issue, are you, about the one we just --
6          MR. MAJORAS:  No, sir.
7          THE COURT:  All right.  I didn't think so.  All right.
8          You wish to address which one?
9          MR. MAJORAS:  This is the issue in what we submitted,
10   which is the pending motion we have to enforce the Court's
11   previous order about the government's production of purchase
12   data, and since we're moving expeditiously through these various
13   discovery orders, Mr. Glass is here, and unless he were to
14   represent that every document subject to that has been produced,
15   we would likewise ask for an order that those documents should
16   have been produced.
17         THE COURT:  I was about to get to that and then to inquire
18   whether or not there's a need for a briefing schedule for this.
19         Yes, Counsel.
20         MR. GLASS:  Your Honor, just the General Services
21   Administration, one of the six entities that defendants have
22   sought information from, have produced 1.3 terabytes of
23   information, 1.3 terabytes.  Now, I'm not tech savvy, but --
24         THE COURT:  I just learned what -- in other litigation
25   I've just learned what a terabyte is.
```

1          MR. GLASS:  Well, you could probably help me.  You could

2     probably tell me what it is.

3          THE COURT:  Is this the same terabyte, I wonder?

4          MR. GLASS:  I don't know.

5          So this is what I did.  I did a little research this

6     morning.  That corresponds to 85 million pages in a Word

7     document.

8          THE COURT:  That's fantastic, I know, yeah.

9          MR. GLASS:  That's a lot of information.  Just the GSA.

10         THE COURT:  Right.

11         MR. GLASS:  Your Honor, we are happy to provide briefing

12    providing in excruciating detail the lengths to which these

13    federal governmental entities, most of them serving our armed

14    forces, have gone through to comply with the requests.  To find

15    every purchase of a microwave oven not at issue in this case,

16    washers, dryers, mini fridges, we've produced an incredible

17    amount of information.

18         We've also offered to defendants the opportunity to go and

19    inspect boxes.  If they felt like our production was incomplete,

20    they could go and they could look through boxes themselves.

21    We've been told by each agency that they've done everything

22    that's humanly possible.

23         I think what you'll find is that there's probably some

24    scattered documents out there in the world.  There's lots of

25    armed forces basis and there's lots of PXs out there.  They

```
1    probably have documents.  But we have done -- and I don't want to

2    even take credit myself.  The six federal governmental agencies

3    have done an incredible effort to provide the documents that

4    defendants have asked for.

5         And, Your Honor, I -- I'm happy to offer people from those

6    agencies for deposition.  We said that in our papers.  I might

7    have even said that to Your Honor the last time we met, but that

8    hasn't been taken up.  This really is -- and excuse me, Your

9    Honor -- a wild goose chase that really is going to have nothing

10   to do with this merger case.

11        THE COURT:  Well, all counsel's asking for is whether or

12   not the government should be required to respond to the request.

13        MR. GLASS:  So we're happy to provide briefing, Your

14   Honor, to show why in --

15        THE COURT:  What you've done, yeah.

16        MR. GLASS:  -- six blocks of single spaces of things that

17   defendants imagine must exist at various federal governmental

18   installations are wrong.  We're happy to provide that.  And

19   actually, Your Honor, I've got a team back at the office working

20   with these entities right now.

21        THE COURT:  Let me ask -- let me stop you for a second,

22   Counsel.  Did anyone discuss this motion before it was filed?

23   Did you have a conversation with the government?

24        MS. RENDER:  Yes, Your Honor.

25        THE COURT:  You did, okay.
```

1          MS. RENDER:  We had meet and confer about this.

2          THE COURT:  All right.

3          MS. RENDER:  And if I may?

4          THE COURT:  Yeah, sure.

5          MS. RENDER:  Thank you.

6          THE COURT:  I mean, is there some simple way to resolve

7   this?  Do you want to depose these people?

8          MS. RENDER:  We really just want the data.

9          And I'll give Your Honor a couple of examples.  GSA did

10  make a very fulsome production.  We have some questions about

11  some of the documents they've produced, and we haven't completely

12  resolved that.  But a lot of data from GSA, and nothing since

13  September 9th, long before your order, from some of the other

14  agencies.  I mean, the fact that GSA produced a lot does not

15  solve the problem for those other agencies.

16         The AAFES produced a lot of data, but they omitted the

17  item description, so we know how many of Part No. 6 people bought

18  and who they bought it from and the date they bought it, but we

19  have no idea what Part No. 6 is.  Is it a washer?  Is it a

20  filter?  We don't know.

21         So the data -- and they certainly have that data.  They

22  certainly have records.  They certainly have a field in their

23  data that shows what that item is.

24         And the other agencies have really produced nothing.  One

25  of them produced an Excel automated summary called a

1    "PivotTable."  That draws on data.  That summarizes data.  We

2    want that data, not just whatever they happen to pull out of it

3    in this automated function.  So there's a lot missing here.  And

4    looking at the data itself, you know that there's -- it exists.

5    They have it, they just didn't produce it.  So we're just looking

6    for the full data production, the data production that Your Honor

7    ordered.

8           THE COURT:  All right.  I have to say that -- this was

9    filed Monday, the holiday, right?  And I saw when it was filed,

10   and I thought long and hard about just ordering a response to the

11   motion before today.  I didn't do that.  I probably should have,

12   but, you know, I'm not going to cry over spilled milk.

13          I mean, fair is fair.  Maybe I should require the

14   government to file a response to this motion on Friday at noon,

15   and then defendants reply on Monday at noon.  And this will be an

16   issue that either I'll resolve before the next status hearing or

17   on the date of the status hearing.

18          But I saw it when it came across, and I actually thought,

19   this is one they'll probably resolve, work it out; but so much

20   for that thought.

21          MR. GLASS:  Your Honor, it is resolvable.  I mean, these

22   issues that defense counsel --

23          THE COURT:  Well, I encourage you to sit down and talk and

24   see if you can resolve it.  Yeah, I agree, they should be, yeah.

25          MR. GLASS:  We tried, Your Honor.  I should say --

1      THE COURT:  Because what would be the incentive on the

2  part of the government to hide the ball, right?

3      MR. GLASS:  None.

4      THE COURT:  Exactly.

5      MR. GLASS:  None.

6      THE COURT:  Do you agree with that?

7      MS. RENDER:  I have no idea what their incentives are

8  either.

9      THE COURT:  All right.

10     MR. GLASS:  Your Honor, these issues -- let me take AAFES.

11 AAFES is the Air Force Exchange.  That's where Air Force service

12 men and women walk into a store --

13     THE COURT:  Right, I'm familiar with that.

14     MR. GLASS:  They produced information that indicated

15 publicly available UPC codes, from which they thought it could be

16 drawn the way it was.  We're happy to provide the additional

17 information if that's what they want.  Nobody asked us for that

18 specific information.

19     Another example, this PivotTable, the Armed Forces

20 Retirement Home, Your Honor, the Armed Forces Requirement Home,

21 1,000 beds, dormitory style, they only buy appliances on

22 occasion.  So they thought they were complying with the Court's

23 order for data by taking documents and summarizing them in an

24 Excel spreadsheet.  All the same information exists in both.

25 This isn't some macro database that the Armed Forces Retirement

1    Home -- and I'm not even sure -- I'm not even sure they have the

2    capability of having a database, Your Honor.

3         Two locations in the entire country.  The Armed Forces

4    Retirement Home isn't sitting on a gigantic database that --

5         THE COURT:  There's one in D.C., right, isn't there?

6         MR. GLASS:  There's one in D.C., exactly.

7         THE COURT:  I'm familiar with that.

8         MR. GLASS:  So I think that once we've had an opportunity

9    to brief this for Your Honor --

10        THE COURT:  You can brief it or maybe you can talk --

11   maybe counsel can resolve it.  If not, you certainly have the

12   opportunity to brief it.

13        MR. GLASS:  Thank you, Your Honor.

14        THE COURT:  All right.  And I'll resolve it either before

15   Wednesday -- I cut you off.  I didn't mean to do that.

16        I'll resolve it before Wednesday or at the hearing on

17   Wednesday.  You were about to say something, but I cut you off.

18        MR. GLASS:  No, no.  I appreciate the opportunity to

19   submit briefing to explain to Your Honor the efforts that these

20   agencies have gone through to comply with Your Honor's order.

21   Because nothing is more important in this case to the Department

22   of Justice or these federal agencies than complying with Your

23   Honor's orders.

24        THE COURT:  All right.  Thank you, Counsel.

25        I think I've covered the list of issues that the Court

```
 1   had -- that the parties had indicated they wanted to discuss.

 2        Oh, is it necessary for the Court to review any of the

 3   documents that have been produced for in-camera review?  I mean,

 4   I have the box of documents.  I've not looked at them, and no

 5   one's said anything about the box of documents, one Bankers Box

 6   of documents.

 7        Counsel.

 8        MR. GLASS:  Your Honor, maybe I'll suggest that you not

 9   look at them for now.

10        THE COURT:  Thank you.

11        MR. GLASS:  Allow us --

12        THE COURT:  I've not been tempted to look at it, believe

13   me.

14        MR. GLASS:  Allow us to try to get some more information

15   about what has been withheld, what has been produced and what has

16   been destroyed.

17        THE COURT:  All right.

18        MR. GLASS:  And I think that would be helpful,

19   particularly if Your Honor's inclined to grant the proposed order

20   that the United States submits, to us being able to provide you

21   with more information about whether or not it's worth the Court's

22   time.

23        THE COURT:  All right.  They'll stay in that box with the

24   cover on them.

25        Yes, Counsel.
```

1       MR. MAJORAS:  I'm certainly not going to disagree that the

2  Court's to review them.  As we indicated in our letter, there's

3  currently no question in terms of any particular documents as to

4  what may or may not be privileged.

5       THE COURT:  Right.

6       MR. MAJORAS:  I think you'll see, if you had to review

7  those, that they are classic attorney-client privileged

8  documents, to the extent they were redactions from what we

9  submitted to the Department of Justice, are included in those

10  documents.

11       THE COURT:  All right.  All right.  Thank you.

12       Are there any other matters that we need to focus on this

13  morning?

14       MR. MAJORAS:  Your Honor, we had -- now that we have

15  another hearing or another conference on the 21st, one of things

16  that we would suggest, perhaps for the Court's consideration,

17  that we can address on the 21st will be some of the logistics of

18  the hearing, including Your Honor's preference in terms of

19  openings, closings and --

20       THE COURT:  What do you mean by preference?

21       MR. MAJORAS:  Whether there will be opening --

22       THE COURT:  Oh, absolutely.  Oh, absolutely.  Nonjury -- I

23  find openings absolutely helpful in nonjury cases.

24       MR. MAJORAS:  I think then all three of us are in

25  agreement on something today, Your Honor.

1          THE COURT:  Absolutely.

2          MR. MAJORAS:  And then the other issue will be closings

3     and when they would be.  If you'd like to hear briefing on that,

4     we talked about this.

5          THE COURT:  That's a very good point.  I think I raised

6     the *Ringling Brothers* case at the very first hearing.  I think I

7     postponed closing argument for a significant period of time to

8     enable parties, at that time, to submit proposed findings of

9     facts and conclusions of law -- I think, I'd have to go back and

10    look at the documents, or maybe you have -- and then I had

11    closing arguments, which I found to be very helpful.  I'll think

12    that's the procedure I followed.  I'll take a look at the

13    *Ringling Brothers* case.  Thank you.  That was tried in '09, I

14    think.

15         MR. MAJORAS:  And as you think about that, Your Honor, the

16    only thing that defendants would request -- I know Mr. Glass does

17    not agree with this, and he can speak about it -- we would ask

18    just for a brief opportunity at the close of the evidentiary

19    hearing to summarize the evidence that was presented.  And then,

20    of course, after the additional legal briefing is done, if you

21    want to hear further in terms of the specific legal -- the

22    application of law to those facts, that may be appropriate.

23         THE COURT:  At the close of the government's

24    case-in-chief?

25         MR. MAJORAS:  No, at the close of both -- at the close of

```
1    the hearing.

2        THE COURT:  All right.  I've done that before, too, and

3    I've actually given time -- I don't think this case is quite in

4    the posture where it would serve any practical purpose to have a

5    continuance after the government's case-in-chief to enable

6    someone to file a motion for judgment.  I don't think so.  I

7    doubt that very seriously.  For the same reason, this case is not

8    in the posture for Rule 56 motions.

9        But, sure, I think that could serve a purpose, absolutely,

10   at the close of the evidence in the trial.  And that would be

11   consistent with, essentially, a recess to enable -- you know, I

12   don't recall whether the proposed order focuses on proposed

13   findings of fact and conclusions of law.  Does it?

14       MR. MAJORAS:  For a brief period after the hearing.  I

15   don't know the date.

16       THE COURT:  Yeah.  So what I need to -- I need to give

17   that some more thought since we're moving, sounds like, towards

18   trial.  But, again, I'll take a look, and I invite you to take a

19   look at that case as well, the *Ringling Brothers* case.  I don't

20   have the docket, but we can certainly find it for you.

21       Yes, Counsel.  Any other matters?

22       MR. GLASS:  I'm inching towards Mr. Majoras.

23       THE COURT:  Yeah.

24       MR. GLASS:  It shows our solidarity, Your Honor.

25       THE COURT:  All right.  Any other issues that we need to
```

1    focus on today?

2        MR. MAJORAS:  I don't think so, Your Honor.  I know in the

3    past you've asked about settlement.

4        THE COURT:  I was about to raise that point.

5        MR. MAJORAS:  I thought you might, sir.

6        THE COURT:  Yeah, yeah.

7        MR. MAJORAS:  Again, I can briefly talk about --

8        THE COURT:  I was also going to raise the point that

9    someone made at the beginning of this case when this case first

10   came before me, and someone suggested it might be helpful to have

11   a magistrate judge assigned for discovery disputes.  And I said,

12   no, I'll deal with those.

13       Go ahead.

14       MR. MAJORAS:  We offered, Your Honor.

15       THE COURT:  Yeah, I know.  I know you did.  I know.

16       MR. MAJORAS:  Again, just briefly -- and if the Court

17   wants to hear more, I'd suggest we do that in chambers or

18   elsewhere.

19       But because the process of trying to resolve a case like

20   this necessarily involves third parties, and we've been -- the

21   defendants have been interacting with third parties to see if

22   there can be a presentation that we can make to resolve the case.

23       THE COURT:  Right.

24       MR. MAJORAS:  We have made significant progress in that,

25   Your Honor.  And, in fact, there's a package that's been put out

1    for bid.  There are two serious bidders on that.

2          We have updated -- the Department of Justice, Mr. Gelfand

3    In particular, just basically as to what process we're in.  We

4    have not made a proposal to them because we need to finalize what

5    we're dealing with the third parties.  We expect that to happen

6    in the very near term.  It's possible we may have more to discuss

7    on the 21st, but that's our update at the moment.  We think we're

8    making progress.

9          THE COURT:  All right.  You're proceeding in different

10   directions.  I understand that.  And I'm not suggesting -- I'm

11   not strongly suggesting this at all, but if at any point it

12   serves a purpose to -- for the parties to suspend discovery and

13   focus on that, I'm certainly receptive to that.  All right?  I

14   know how everyone's, you know, jealously guarding that date, and

15   I have it on my calendar, and it's a good date, and we spent a

16   lot of time talking about good dates with all of the religious

17   observations coming up towards the end of the year, et cetera,

18   et cetera.  And I'm not, you know, enthusiastic about moving it,

19   but nevertheless, I mean, if the parties come to me and say, you

20   know, we're making some progress, Judge, and maybe a few days

21   here or there, it might enable us to focus our attention in that

22   area.  I'm certainly going to be receptive to that.

23         MR. MAJORAS:  I think it's fair to say, Your Honor, that

24   in some respects the government is a bit in the dark in terms of

25   what --

1          THE COURT:  I'm sure, because you're dealing with other

2    entities.

3          MR. MAJORAS:  And we expect to have that -- we hope to

4    have that conversation very soon.  And as I've said previously,

5    to the extent we think it would be useful, and hopefully jointly

6    think it would be useful if that's necessary, we would invoke the

7    Court's guidance.

8          THE COURT:  Sure, sure.  Whatever I can do to be helpful,

9    I'll be happy to do that.

10          MR. MAJORAS:  We appreciate that.

11          THE COURT:  Yes, Counsel.

12          MR. GLASS:  I don't want to be the bearer of bad news.  We

13    have received nothing from defendants on this.  We've received

14    two calls, two short calls, where they said they were working on

15    something.  We're now two weeks away from the pretrial

16    conference.

17          As Your Honor knows, because Your Honor has gone through

18    the process of a *Tunney* proceeding, it is actually a whole

19    investigation unto itself to analyze whether or not a settlement

20    solves the competitive issues with a transaction.  Our standard

21    is whether or not a divestiture replaces the competition that's

22    lost by the merger.  It's no simple feet to figure out.  It's not

23    something we can do overnight.  It's not something we can do

24    ourselves.  We need to talk to people, including the whoever the

25    divestiture partners are, so far unknown to us.  We need to talk

1    to customers.  We may need to take discovery of that issue.

2         And, Your Honor, we don't see how, with all the issues

3    that we're cramming in before trial on trial, how it could

4    possibly happen that we're going to be able to also investigate

5    some settlement proposal that we don't even have an idea of who

6    the divestiture partners are.

7         THE COURT:  I can appreciate that.

8         Yes.

9         MR. MAJORAS:  Your Honor, I believe that's consistent with

10   the facts as I presented them.  We understand that issue.  We

11   have certainly in other matters, whether with the government or

12   in any private litigation, there are always the time pressures

13   which often focus the attention as we have to go forward.  We

14   understand the procedures.

15        Our goal has always been to present to the Department of

16   Justice a remedy that does satisfy the concerns that they have.

17   Until we can iron that out, we've been having to do this two-step

18   process with the third parties.  What I'm indicating is I think

19   we're very close to finalizing that first part.  We will engage

20   the government as early as possible once we're able to do that.

21        THE COURT:  All right.  There's nothing I can do other

22   than -- I'm sensitive also.  I mean, I've had a few, you know,

23   large merger cases over time, and, you know, there have been

24   settlements in one or two, and others have gone the full

25   distance, so I understand that.  I mean, divestitures is the key

1    issue, and selling off assets as appropriate.

2         So there's nothing I can do, other than be sensitive and

3    be available for any modifications of the schedule to suspend

4    discovery or, you know, to do whatever I can do to assist.

5         But that -- you know, this is a firm trial date, and

6    that's about all I can say, too.  So I'm not going to lose sight

7    of that as well.

8         MR. MAJORAS:  We understand that, Your Honor, and we're

9    fully prepared and will be prepared to go to trial, if that

10   becomes necessary, on November 9th.

11        THE COURT:  All right.  All right.

12        All right.  Anything else from anyone?

13        MR. GLASS:  Your Honor, I want to say thank you on behalf

14   of the United States for the extra time you've given us.  I know

15   you have another matter.  I think that the U.S. Attorney and

16   defense counsel have had to wait for us to talk about this

17   matter, and we appreciate you scheduling some more time.

18        THE COURT:  Sure.  Sure, no, absolutely.  No, I'm

19   available.  And, you know, there are other matters on the

20   calendar that are driving the Court's time as well, but this

21   is -- we have a trial date, and you have my attention, and that's

22   about all I can say at this point.

23        All right.  It's good to see everyone.  Thank you.  Have a

24   nice day.

25        MS. RENDER:  Thank you, Your Honor.

1    (Proceedings adjourned at 12:17 p.m.)

2

3                    **C E R T I F I C A T E**

4              I, Scott L. Wallace, RDR-CRR, certify that
     the foregoing is a correct transcript from the record of
5    proceedings in the above-entitled matter.

6

7      /s/ Scott L. Wallace                10/15/15

8      _____      _____
       **Scott L. Wallace, RDR, CRR          Date**
9        **Official Court Reporter**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25